HOUSING RIGHTS CENTER
D. Scott Chang (SBN 146403)
schang@housingrightscenter.org
Rodney Leggett (SBN 332119)
rleggett@housingrightscenter.org
Zachary Frederick (SBN 333738)
zfrederick@housingrightscenter.org
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA 90010
Tel:   (949) 398-8080
Fax:   (949) 398-8081

BRANCART & BRANCART
Christopher Brancart (SBN 128475)
cbrancart@brancart.com
P.O. Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Housing Rights Center

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER, INC. d/b/a HOUSING RIGHTS CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> TPG (METROPOLITAN) LLC, POMONA PARK & PLAZA LLC, and ASSET CAMPUS USA, LLC, <br><br> Defendants | No. 2:20-cv-03056-JAK-PLA <br><br> **JOINT STIPULATION PURSUANT TO LR 37 IN CONNECTION WITH PLAINTIFF' S MOTION TO COMPEL** <br><br> Hearing Date:   07/14/2021 <br> Hearing Time:   10:00 am <br> Room:            TBD <br><br> Discovery Cutoff: September 20, 2021 <br> Trial Date:       Not set <br><br> ***DISCOVERY MATTER*** |

Pursuant to LR 37-2, the parties hereby submit their joint stipulation in

connection with plaintiff's motion to compel seeking:

•   Further responses and production from defendants TPG (Metropolitan), LLC ("TPG") and Pomona Park & Plaza, LLC ("Pomona Park") regarding plaintiff's requests for production Nos. 2, 3, 4, 7, 9, 11, 13, 15, 16, 17, 19, 20, 21, 26, 32, 33, 34, 35, 37, 38, 39, 40, 42, 43, 44, 46, 47, 48, 49, and 53.[1]

•   Further responses and production from defendant TPG only regarding plaintiff's requests for production Nos. 56, 57, 60, 61, 62, 63, and 64.

•   Further responses and production from defendant Pomona Park regarding plaintiff's requests for production Nos. 56 and 57.

•   Further answers from defendant TPG regarding plaintiff's interrogatories Nos. 15 and 16.

Supporting declarations are filed concurrently herewith and include exhibits 1-33, 35-38, and 43-47 attached to the Declaration of Christopher Brancart on behalf of

///

///

///

///

---

[1] These identical requests were served by plaintiff on defendant TPG and defendant Pomona Park, and identical responses were served by TPG and Pomona Park.

-ii-

1  plaintiff and exhibits 48-54 attached to the Declaration of Stephen Farkas on

2  behalf of defendants.[2]

3

4                                    * * *

5       Dated:  June 23, 2021.

6                              Respectfully submitted,

7

8  BRANCART & BRANCART                    CALLAHAN & BLAINE, APLC

9  */s/ Christopher Brancart*             */s/ Stephen Farkas*
   Christopher Brancart (SBN 128475)      Edward Susolik (SBN 151081)
10 cbrancart@brancart.com                 esusolik@callahan-law.com
   P.O. Box 686                           Stephen P. Farkas (SBN 234060)
11 Pescadero, CA 94060                    sfarkas@callahan-law.com
   Tel:   (650) 879-0141                  3 Hutton Centre Drive, Ninth Floor
12                                        Santa Ana, CA 92707
13 HOUSING RIGHTS CENTER                  Tel:   (714) 241-4444
   D. Scott Chang (SBN 146403)
14 schang@housingrightscenter.org         Attorneys for Defendants TPG
   Rodney Leggett (SBN 332119)            Metropolitan, LLC and Pomona Park
15 rleggett@housingrightscenter.org       & Plaza, LLC
   Zachary Frederick (SBN 333738)
16 zfrederick@housingrightscenter.org
   3255 Wilshire Boulevard, Suite 1150
17 Los Angeles, CA 90010
   Tel:   (949) 398-8080
18
   Attorneys for Plaintiff Housing Rights
19 Center

20

21

22

23

24 ──────────────────────

25      [2] Exhibits 34 (Campus marketing plan), 39-42 (management agreements),

26 and 55 (HRC tester report) are stamped confidential by the parties; accordingly,

27

28 these exhibits have been removed from these declarations.

                                    -iii-

# **TABLE OF CONTENTS**

**JOINT STIPULATION OF THE PARTIES**

**INTRODUCTIONS**

Plaintiff's Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Defendants' Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**DISCOVERY IN DISPUTE FOLLOWED BY EACH**

**SIDE'S ARGUMENT**

**I.    DISCOVERY SEEKING INFORMATION REGARDING THE**

**RELATIONSHIP AMONG DEFENDANTS AND THEIR PRINCIPALS,**

**SUCCESSORS, AND AGENTS AND BETWEEN DEFENDANTS AND THE**

**SUBJECT RENTAL DWELLINGS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Plaintiff HRC's Argument Re:  Discovery Seeking Information

      Regarding the Relationship among Defendants and Their Principals,

      Successors, and Agents and Between Defendants and the Subject Rental

      Dwellings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           1.    The factual basis for HRC's discovery regarding the

           relationship among Picerne entitles and their relationship to the

           subject property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

           2.    The legal basis for HRC's request for discovery regarding the

           relationship among Picerne entities and their relationship to the

           subject property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

      B.    Defendants' Argument Re:  Discovery Seeking Information

      Regarding the Relationship among Defendants and Their Principals,

      Successors, and Agents and Between Defendants and the Subject Rental

      Dwellings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

           1.    Plaintiff's Discovery Requests for Documents Regarding

           Unrelated Entities Is Not Proportional to the Needs of the Case . .  24

2.     Plaintiff's Motion Was Filed 10 Months after the Meet and

Confer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

II.   **DISCOVERY OF INFORMATION REGARDING ALLEGED**

**DISPLACEMENT OF TENANTS AT THE 777 PLACE APARTMENTS**. . 25

A.     Plaintiff HRC's Argument Re:  Discovery of Information Regarding

Displacement of Tenants at the 777 Place Apartments.. . . . . . . . . . . . . . 38

1.     The factual basis for HRC's discovery regarding the

displacement of tenants at the 777 Place Apartments . . . . . . . . . .  38

2.     The legal basis for HRC's discovery regarding the displacement

of tenants at the 777 Place Apartments . . . . . . . . . . . . . . . . . . . . .  41

B.     Defendants' Argument Re:  Discovery of Information Regarding

Displacement of Tenants at the 777 Place Apartments . . . . . . . . . . . . . . . 46

1.     The Discovery Sought Is Not Proportional to the Needs of the

Case Because it Involves Acts Beyond the Statute of Limitations .  47

2.     Defendants Were Not Required to Accept Section 8 Tenants

after the Redevelopment Bond Was Satisfied . . . . . . . . . . . . . . . . .  47

3.     Defendants Have Provided All Responsive Documents in Their

Possession, Custody or Control . . . . . . . . . . . . . . . . . . . . . . . . . . .  49

III.  **DISCOVERY OF INFORMATION REGARDING DEFENDANTS'**

**RENTAL CRITERIA, RENTAL POLICIES, AND COMPLIANCE WITH**

**AFFORDABLE HOUSING COVENANTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

A.     Plaintiff HRC's Argument Re: Discovery of  Information Regarding

Defendants' Rental Criteria, Rental Policies, and Compliance with

Affordable Housing Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

1.     The factual basis for the discovery of information regarding

defendants' rental criteria and compliance with the affordable housing

covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  69

2.     The legal basis for discovery of information regarding

defendants' compliance with the affordable housing covenants . . .  73

    B.    Defendants' Argument Re: Discovery of Information Regarding Defendants' Rental Criteria, Rental Policies, and Compliance with Affordable Housing Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

        1.    Plaintiff Lacks Standing to Compel Discovery Related to CC&R Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  76

        2.    Plaintiff Combines Defendants' Former Obligations under the OPA with the Existing CC&Rs . . . . . . . . . . . . . . . . . . . . . . . . . .  78

        3.    The Alleged Injury Is a Preference for Students - Not CC&R Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  79

        4.    Discovery Related to CR&R or Regulatory Compliance Is Overbroad and Disproportionate to the Needs of the Case . . . . . . .  80

**IV.**    **DISCOVERY OF INFORMATION REGARDING THE MARKETING OF RENTAL DWELLINGS AT THE 777 PLACE APARTMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

    A.    Plaintiff HRC's Argument Re: Discovery of Information Regarding the Marketing of Rental Dwellings at the 777 Place Apartments . . . . . . . . 89

        1.    The factual basis for the discovery of information regarding the marketing of dwelling at the 777 Place Apartments . . . . . . . . . . . .  89

        2.    The legal basis for discovery of information regarding the marketing of dwellings at the 777 Place Apartments . . . . . . . . . . .  90

    B.    Defendants' Argument Re: Discovery of Information Regarding the Marketing of Rental Dwellings at the 777 Place Apartments . . . . . . . . . . . 92

        1.    Request for Production No. 26. . . . . . . . . . . . . . . . . . . . . . . .  93

        2.    Request for Production Nos. 42, 43, 44 and 46. . . . . . . . . . .  93

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JOINT STIPULATION OF THE PARTIES

## INTRODUCTIONS

**Plaintiff's Introduction:**  Plaintiff Housing Right Center (HRC) sues defendants TPG (Metropolitan), LLC("TPG") and Pomona Park and Plaza, LLC ("Pomona Park") for committing a continual, decades-long pattern or practice of housing discrimination in violation of the Fair Housing Act.  HRC alleges that TPG and Pomona Park systemically displaced tenants based on age, familial status, and race at a large 432-unit apartment complex in Pomona, the 777 Place Apartments.  (ECF 35, ¶¶ 26 -33.) Kenneth Picerne, defendants' principal, entered into an affordable housing agreement with the City of Pomona in 1996.  The City gave Picerne funding and property rights in exchange for Picerne's promise to fix up the apartments, management them in accordance with fair housing laws, and to set aside 64% of the units as affordable housing for very low income (20%) and low and moderate income (44%) tenants, including senior housing units. Since at least 2009, Picerne has consistently violated the terms of that pledge while committing a pattern or practice of housing discrimination.  This disputed discovery seeks documents that contain information relevant to proof of HRC's fair housing claims under the disparate treatment and disparate impact theories, as examined in the argument below.

The discovery in dispute – and each side's arguments – are organized around the following four topics:

1.      Discovery seeking information regarding the relationship among defendants and their principals, successors, and agents and between defendants and the subject rental dwellings;

2.      Discovery of information regarding alleged displacement of tenants at the 777 Place Apartments;

3.      Discovery of information regarding defendants' rental criteria, rental policies, and compliance with affordable housing covenants.

4.      Discovery of information regarding the marketing of rental dwellings

at the 777 Place Apartments.

**Defendants' Introduction:**  Plaintiff Southern California Housing Rights Center ("Plaintiff") seeks to compel discovery based on several incorrect underlying assumptions.  First, much of Plaintiff's discovery requests are based on an "affordable housing agreement" that was entered into in 1996.  While certain terms of that agreement were incorporated into 777 Place Apartment's (the "Property") Conditions, Covenants and Restrictions ("CC&Rs"), the underlying bonds serving as the consideration for that agreement were satisfied in 2009.  Upon the Bond's satisfaction, the only relevant restrictions on the Property's use were the CC&Rs.  Therefore, to the extent Plaintiff's discovery requests are premised upon obligations relating to the 1996 Redevelopment Agreement or its 1998 Amendment, those requirements no longer apply and the discovery is disproportionate to the needs of the case.

Second, Plaintiff lacks standing to pursue any alleged breaches of the Property's CC&Rs.  While Plaintiff claims discovery related to CC&R compliance or communications with the City of Pomona relate to its disparate impact claim, the alleged discriminatory practice at issue is Defendants' purported preference for student tenants over other protected classes.  (First Amended Complaint/ECF 35 45-50.)  Defendants have provided thousands of pages of discovery on the demographic profile of the tenants occupying the Property's 472 units by providing Plaintiff access to approximately 12 years of tenant applications, records and files.  Whether Defendants have maintained rental policies that comply with the CC&R's affordable housing covenants are irrelevant and beyond the scope of Plaintiff's FHA or FEHA claims.  Moreover, any enforcement rights associated with the affordability covenants are expressly and exclusively provided to the City of Pomona - not Plaintiff.  Therefore, Plaintiff cannot pursue claims arising under the CC&Rs and discovery related to the CC&Rs is unduly burdensome and not proportional to the needs of the case.

Third, despite Plaintiff's accusation, defendants TPG (Metropolitan) LLC and Pomona Park (collectively "Defendants") have not committed "a continual, decades-long pattern or practice of housing discrimination in violation of the Fair Housing Act."  Defendants are the corporate entities that have held title to the Property.  Over the course of the time period for the discovery at issue, the Property was managed by no less than 4 multi-state, professional property management groups.  Indeed, if such a prolonged scheme to perpetrate housing discrimination in fact existed, it would have required the assistance of each prior management group to not only perpetuate the conspiracy, but their assistance to initiate the next manager into the alleged conspiracy.

Finally, Defendants have concurrently filed a motion for partial summary judgment under Federal Rule of Civil Procedure 56 on the issues of Plaintiff's ability to enforce the CC&Rs and whether Plaintiff's Section 8 claims are barred by the statute of limitations.  If Defendants are successful on their Rule 56 Motion, much of the requested discovery will be moot.  Therefore, due to the significant overlap between the issues raised by this discovery dispute and the Rule 56 Motion, Defendants anticipate moving the Court to coordinate both motions' briefing and argument.

**DISCOVERY IN DISPUTE FOLLOWED BY EACH SIDE'S ARGUMENT**

**I.      DISCOVERY SEEKING INFORMATION REGARDING THE RELATIONSHIP AMONG DEFENDANTS AND THEIR PRINCIPALS, SUCCESSORS, AND AGENTS AND BETWEEN DEFENDANTS AND THE SUBJECT RENTAL DWELLINGS.**[3]

HRC alleges in the first amended complaint that since 1996 Kenneth

---

[3] The requests referenced in this section were served by HRC in identical format on defendant TPG and defendant Pomona Park, and identical responses were served by TPG (Exhibit 2) and Pomona Park (Exhibit 3) on HRC.

Picerne, defendants' principal, acting through various corporate entities acquired, financed and operated the 777 Place Apartments, subject to a variety of City-imposed affordable housing restrictions.   (First Amended Complaint/ECF 35, ¶¶ 14-25.)   Defendants admit in part some of these allegations (Answer/ECF 24,  ¶¶ 14-16, 18-20, 23, 24), but deny in full the remainder (*id.*, ¶ 17, 21, 22, 25). Regarding five Picerne entities – TPG and Pomona Park (Request 7), Picerne Associates (Requests 3, 11, 16, 20),  Picerne Management Company (Requests 4, 13, 17, 21), and The Picerne Group (Request 2, 9, 15, 19) – defendants provided the following responses in discovery:

        **1.**    <u>**Requests and Responses Regarding TPG and Pomona Park.**</u>

        •    ***REQUEST FOR PRODUCTION NO. 7 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***  Please produce each corporate record – e.g., resolutions, minutes, reports – of [TPG or Pomona Park[4]] regarding ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments Apartments. Despite the scope of Plaintiff's claims, the

---

[4] Because these reprints combine identical requests to and responses from TPG and Pomona Park, the use of the term "or" is inclusive, meaning TPG or Pomona Park or both.

Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each corporate record" related to or concerning 12 unspecified, generally categories is overbroad, vague, ambiguous and unduly burdensome such that Defendant cannot formulate a meaningful response.

**2.** **Requests and Responses Regarding Picerne Associates.**

• ***REQUEST FOR PRODUCTION NO. 3 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** Please produce documents sufficient to determine the relationship between [TPG or Pomona Park] and Picerne Associates, LLC in connection with the ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 3 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. The Request is further burdensome and harassing as it seeks documents that are more readily available from public sources. The Request is further vague and ambiguous as to the term "in connection with" when broadly requesting

-5-

information in 12 unspecified areas, (such as "operation" or "management").
The ambiguous nature of the request renders it unintelligible to
such an extent that Defendant cannot formulate a meaningful response.

\* \* \*

• ***REQUEST FOR PRODUCTION NO. 11 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***  Please produce each corporate record – e.g., resolutions, minutes, reports – of Picerne Associates, LLC regarding ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 11 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:  Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each corporate record" related to or concerning 12 unspecified, generally categories is overbroad, vague, ambiguous and unduly burdensome such that Defendant cannot formulate a meaningful response. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control.

\* \* \*

-6-

• ***REQUEST FOR PRODUCTION NO. 16 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** Please produce each agreement between Picerne Associates, LLC and the City of Pomona regarding ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:   Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "each agreement between Picerne Associates, LLC and the City of Pomona" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each agreement" related to or concern 12 unspecified, generally categories is overbroad, vague, ambiguous and unduly burdensome such that Defendant cannot formulate a meaningful response. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control.

* * *

• ***REQUEST FOR PRODUCTION NO. 20 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** Please produce each document reflecting written communications between Picerne Associates, LLC and the

City of Pomona regarding the terms, conditions, implementation, or performance of any agreement related to rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 20 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each document reflecting written communications" related to or concerning unspecified topics such as "the terms, conditions, implementation, or performance of any agreement related to rental dwellings" is overbroad, vague and ambiguous. The ambiguous nature of the request renders it unintelligible to such an extent that Defendant cannot formulate a meaningful response. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control.

**3.    Requests and Responses Regarding  Picerne Management Company**

•    *REQUEST FOR PRODUCTION NO. 4 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:* Please produce documents sufficient to determine the relationship between [TPG or Pomona Park] and

Picerne Management Company, Inc. in connection with the ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 4 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. The Request is further burdensome and harassing as it seeks documents that are more readily available from public sources. The Request is further vague and ambiguous as to the term "in connection with" when broadly requesting information in 12 unspecified areas, (such as "operation" or "management"). The ambiguous nature of the request renders it unintelligible to such an extent that Defendant cannot formulate a meaningful response.

\* \* \*

• ***REQUEST FOR PRODUCTION NO. 13 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** Please produce each corporate record – e.g., resolutions, minutes, reports – of Picerne Management Company, Inc. regarding ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

-9-

RESPONSE TO REQUEST FOR PRODUCTION NO. 13 TO
DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant
objects to this request on the grounds that the request is overbroad as to time
and scope in that it seeks documents related to issues beyond those framed
by the pleadings and outside the time frame relevant to Plaintiff's Fair
Housing claims. The claims asserted relate to the management and operation
of one specific location during the time period of 2009 through the present:
777 Place Apartments. Despite the scope of Plaintiff's claims, the Request
seeks discovery on "rental dwellings in Pomona, California" regardless of
time. As such, the Request seeks documents that are not relevant to the
claims and defenses and not proportional to the needs of this case.
Defendant further objects on the ground that this request for "each corporate
record" related to or concerning 12 unspecified, generally categories is
overbroad, vague, ambiguous and unduly burdensome such that Defendant
cannot formulate a meaningful response. Finally, Defendant objects that the
Request seeks documents held by third parties and not within this
responding party's possession, custody or control.

\* \* \*

• **_REQUEST FOR PRODUCTION NO. 17 TO DEFENDANT TPG_**
**_AND DEFENDANT POMONA PARK:_** Please produce each agreement
between Picerne Management Company, Inc. and the City of Pomona
regarding ownership, purchase, sale, financing, construction, rehabilitation,
control, operation, management, rental or occupancy or transfer of rental
dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 17 TO
DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant
objects to this request on the grounds that the request is overbroad as to time
and scope in that it seeks documents related to issues beyond those framed

by the pleadings and outside the time frame relevant to Plaintiff's Fair
Housing claims. The claims asserted relate to the management and operation
of one specific location during the time period of 2009 through the present:
777 Place Apartments. Despite the scope of Plaintiff's claims, the Request
seeks discovery on "each agreement between Picerne Management
Company, Inc. and the City of Pomona" regardless of time. As such, the
Request seeks documents that are not relevant to the claims and defenses
and not proportional to the needs of this case. Defendant further objects on
the ground that this request for "each agreement" related to or concern 12
unspecified, generally categories is overbroad, vague, ambiguous and
unduly burdensome such that Defendant cannot formulate a meaningful
response. Finally, Defendant objects that the Request seeks documents held
by third parties and not within this responding party's possession, custody or
control.

\* \* \*

• **_REQUEST FOR PRODUCTION NO. 21 TO DEFENDANT TPG_**
**_AND DEFENDANT POMONA PARK:_** Please produce each document
reflecting written communications between Picerne Management Company,
Inc. and the City of Pomona regarding the terms, conditions,
implementation, or performance of any agreement related to rental
dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 21 TO
DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant
objects to this request on the grounds that the request is overbroad as to time
and scope in that it seeks documents related to issues beyond those framed
by the pleadings and outside the time frame relevant to Plaintiff's Fair
Housing claims. The claims asserted relate to the management and operation
of one specific location during the time period of 2009 through the present:

-11-

777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each document reflecting written communications" related to or concerning unspecified topics such as "the terms, conditions, implementation, or performance of any agreement related to rental dwellings" is overbroad, vague and ambiguous. The ambiguous nature of the request renders it unintelligible to such an extent that Defendant cannot formulate a meaningful response. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control.

**4.** **Requests and Responses Regarding The Picerne Group**

• *REQUEST FOR PRODUCTION NO. 2 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*  Please produce documents sufficient to determine the relationship between [TPG or Pomona Park] and The Picerne Group, Inc. in connection with the ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California. RESPONSE TO REQUEST FOR PRODUCTION NO. 2 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:  Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks

-12-

discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. The Request is further burdensome and harassing as it seeks documents that are more readily available from public sources. The Request is further vague and ambiguous as to the term "in connection with" when broadly requesting information in 12 unspecified areas, (such as "operation" or "management"). The ambiguous nature of the request renders it unintelligible to such an extent that Defendant cannot formulate a meaningful response.

* * *

• ***REQUEST FOR PRODUCTION NO. 9 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** Please produce each corporate record – e.g., resolutions, minutes, reports – of The Picerne Group, Inc. regarding ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 9  TO DEFENDANT TPG AND DEFENDANT POMONA PARK:  Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case.

-13-

Defendant further objects on the ground that this request for "each corporate record" related to or concerning 12 unspecified, generally categories is overbroad, vague, ambiguous and unduly burdensome such that Defendant cannot formulate a meaningful response. Subject to and without waiving the foregoing, Defendant agrees to produce responsive documents in its possession, custody or control and relevant to 777 Place Apartments. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control.

\* \* \*

•    ***REQUEST FOR PRODUCTION NO. 15 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***    Please produce each agreement between The Picerne Group, Inc. and the City of Pomona regarding ownership, purchase, sale, financing, construction, rehabilitation, control, operation, management, rental, occupancy or transfer of rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:   Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "each agreement between The Picerne Group, Inc. and the City of Pomona" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each agreement" related to or concern 12

-14-

unspecified, generally categories is overbroad, vague, ambiguous and unduly burdensome such that Defendant cannot formulate a meaningful response. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control.

*   *   *

•   ***REQUEST FOR PRODUCTION NO. 19 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***   Please produce each document reflecting written communications between The Picerne Group, Inc. and the City of Pomona regarding the terms, conditions, implementation, or performance of any agreement related to rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 19 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:   Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each document reflecting written communications" related to or concerning unspecified topics such as "the terms, conditions, implementation, or performance of any agreement related to rental dwellings" is overbroad, vague and ambiguous. The ambiguous nature of the request renders it

unintelligible to such an extent that Defendant cannot formulate a meaningful response. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control.

**A.    Plaintiff HRC's Argument Re:  Discovery Seeking Information Regarding the Relationship among Defendants and Their Principals, Successors, and Agents and Between Defendants and the Subject Rental Dwellings.**

> **1.    _The factual basis for HRC's discovery regarding the relationship among Picerne entitles and their relationship to the subject property._**

The source of the factual basis for this discovery – and the underlying allegations in the first amended complaint (ECF 35) – is public records uncovered by HRC during its prefiling investigation.  Each Picerne entity listed in each HRC's request – Picerne Associates, Picerne Management Company, The Picerne Company – was copied directly from public records reflecting that entity's involvement in the acquisition, control, and operation of the 777 Place Apartments, the subject dwelling at the center of this action.

In 1996, Kenneth Picerne, defendants' principal, executed an Owner Participation Agreement (OPA) with the City of Pomona granting Picerne access to affordable housing bond funding to acquire several distressed apartment buildings in Pomona, in exchange for Picerne's agreement to rehabilitate 772 dwelling units in several apartment buildings and operate them as affordable housing.  (Exhibit 24/City 4, p. 2.)  The OPA specifically enabled Picerne to immediately acquire a large, 472-unit apartment complex spanning two street addresses, 750 and 755 East Third Avenue, then known as the Pomona Park and Plaza apartments and now referred to as the 777 Place Apartments.  (Exhibit 24/City 5-6, pp. 3-4.)

Under the 1996 OPA, Picerne agreed on behalf of himself and his entities, successors, and assigns:

- To set aside 64% of the units at the 777 Place apartment as affordable housing for very low income (20%) and low and moderate income (44%) tenants, including senior housing units, in accordance with the following schedule (Exhibit 24/City 23-24, pp. 21-22):

| Income Restrictions | The Park Senior Housing Units | The Plaza Family Housing Units | Total Housing Units |
|---|---|---|---|
| 20% Very Low (0-50% MFI) | 39 | 56 | 95 |
| 44% Low to Mod (51%-120% MFI) | 84 | 123 | 207 |
| Total Units Restricted (64%) | 123 | 179 | 302 |
| Total Units Available | 192 | 280 | 472 |

- To "hire ***Picerne Management Company*** to manage" the 777 Place Apartments in accordance with a management plan (Exhibit 24/City 13, p. 11) promising that "Apartments will be marketed in accordance with all Affirmative Fair Housing guidelines and policies" (Exhibit 24/City 97, p. 6).[5]

---

[5] OPA/attachment 6: "The marketing plan will attempt to include outreach strategies for persons with special occupancy requirements, including the elderly and physically disabled. In this endeavor, a comprehensive effort will be made to distribute marketing materials to organizations that are likely to have contact with senior citizens and/or handicapped persons. Organizations that could assist the

• To operate the 777 Place Apartments in accordance with a nondiscrimination policy (Exhibit 24/City 25) that must be reprinted in every tenant's lease agreement (Exhibit 24/City 26);[6] and,

• To maintain control and responsibility for the operation of the 777 Place Apartments, including compliance with the OPA affordable housing conditions.[7]

Picerne's obligations run with the land (Exhibit 24/City 26-27, p. 24-25), as

---

Agent in this endeavor would be senior citizen groups, meal providers, health providers, community resource referral agencies, educational agencies, and religious institutions and organizations." (Exhibit 24/City 97,  p. 4.)

[6] "There shall be no discrimination against or segregation of any person, or group of persons on account of sex, race, color, creed, religion, age, disability, marital status, ancestry or national origin, in the sale, lease, transfer, use, occupancy, tenure or enjoyment of land, nor shall the transferee himself or any person claiming under or through him, establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use or occupancy of tenants; lessees, subtenants, sublessees or vendees." (Exhibit 24/City 26,  p. 24.)

[7] "Developer shall have the right, prior to the Close of Escrow for any Property, and subject to the conditions set forth below, to assign this Agreement with respect to the subject Property to a California Limited Liability Company of which both (a) more than fifty percent (50%) of the membership interests shall be owned and controlled by Kenneth A. Picerne and Picerne Associates, and (b) Kenneth A. Picerne and Picerne Associates shall be the managing members." (Exhibit 24/City 8,  p. 6.)

reflected in the CCRs that Picerne was required to record pursuant to the OPA (Exhibit 25).  Picerne executed the OPA on behalf of the "Developer, Pomona park and Plaza, LLC" (Exhibit 24/City 46, p. 44) in his capacity as President of ***Picerne Associates, Inc.*** (Exhibit 24/City 47).

Between 1996 and 1998, Picerne, through ***Picerne Management Company***, dutifully reported his compliance with the OPA's affordable housing covenant. (*See*, *e.g.*, Exhibit 26/City 535.)

In December 1997, Picerne asked the City to issue and sell a new series of affordable housing bonds (1998 Series A) and lend the proceeds to Picerne so that Picerne could refinance the 1985 housing bond funding originally used to construct the 777 Place Apartments and later used to finance Picerne's acquisition and rehabilitation of the property.  (Exhibit 27.) The City agreed, but extracted two concessions from Picerne:   First, under the amended 1998 regulatory agreement, Picerne agreed to not discriminate against Section 8 tenants (tenants whose rent is subsidized in the form of a Housing Choice Voucher administered by a public housing authority).  (Exhibit 28/City 164.)   Second, the 1998 bond funding explicitly stated that the 1996 OPA's affordable housing covenants would run with the land for a period of 30 years (or until 2026):

[T]he OPA and the associated Declaration of Conditions, Covenants and Restrictions will continue to impose occupancy restrictions on the Project which require that at least 20 % of the units be rented to very low income persons or families, wherein the annual income does not exceed 50% of the area median income, adjusted for family size, and that 44% of the units be rented to low and moderate income persons or families, wherein the annual income is between 51% and 120% of the area median income, adjusted for family size. The remaining 36% of the units will have no occupancy or rent restrictions.  The occupancy requirements are to be maintained for 30 years from and after the date of recording of the Declaration of Conditions,

Covenants and Restrictions.  (Exhibit 29/Attachment I.)

Picerne acknowledged his continuing obligation to comply with the 1996 OPA affordable housing restrictions in April 2009:

> we also acknowledge and affirm that the affordability restrictions set forth in the Declaration of Conditions, Covenants and Restrictions recorded on December 30, 1996 in the Official Records, Recorder's Office, Los Angeles County, California (the "Agency CCRs") will continue in full force and effect beyond the termination of the Bond Regulatory Agreement through and including December 30, 2026. The Agency CCRs contain certain affordability restrictions that mirror those in the Bond Regulatory Agreement, as well as further restrictions benefiting Low To Moderate Income Tenants.  (Exhibit 30.)

In 2012, Picerne renamed defendant ***Pomona Park and Plaza LLC*** as defendant ***TPG (Metropolitan) LLC***, which now holds the title to the 777 Place Apartments:

> defendant Pomona Park and Plaza, LLC ("Park & Plaza") . . . .owned and operated 777 Place Apartments during the relevant time periods alleged in Plaintiff's Complaint. Park & Plaza changed its name to TPG in 2012. (Answer/ECF 24, ¶ 7.)

Since 2010, Picerne has hired and delegated management of the 777 Place Apartments to a string of management companies:  FPI (2009-2013), Pierce Education Property Management (2013-2015), defendant Asset Campus (2015-2019), and Greystar (2019-present).  (*See*, *e.g.*, TPG's and Pomona Park's responses to requests for production 26, 43, 44.)  As discussed below, at various times, Picerne has failed or refused to report to the City his compliance with the affordable housing conditions binding operation of the 777 Place Apartments. When Picerne reported his compliance in 2007 and 2008, he did so using letterhead for ***The Picerne Group***.  (Exhibit 31.)

-20-

2.      *The legal basis for HRC's request for discovery regarding the relationship among Picerne entities and their relationship to the subject property.*

HRC conferred with defendants pursuant to LR 37 on September 25, 2020 in an effort to resolve this dispute, but was unable to reach an agreement. (Exhibit 8.) This discovery is relevant and proportional for several reasons.

First, determining who controlled the 777 Place Apartments – and when that control was exercised – is relevant to determining who may be liable for the discriminatory housing practices alleged by HRC.  The FHA focuses on unlawful *practices*; unlike other civil rights statutes, such as Title VII, the FHA does not limit *who* may be held liable.  *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *cf.* 42 U.S.C. § 2000e-2 (Title VII limits liability for unlawful employment practices to "employers").  Instead, the FHA looks to traditional tort and agency principles to determine the nature and scope of liability. *See*, *e.g.*, *Meyer*, 537 U.S. at 286. HUD provides guidance for fitting tort and agency principles to the FHA's text and objectives.  The HUD rule, *Liability for Discriminatory Housing Practices*, 24 C.F.R. § 100.7, provides:

> A person is directly liable for (i) The person's own conduct that results in a discriminatory housing practice; (ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's . . . agent, where the person knew or should have known of the discriminatory conduct; and (iii) Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. Id., § 100.7(a)(1).

In addition, a person may be vicariously liable "for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing

practice, consistent with agency law." *Id.*, § 100.7(b).   To apply these principles in the case at bar, HRC needs access to the information requested in this discovery regarding the relationship among the various Picerne entities listed in each request and their relationship to the 777 Place Apartments.

Second, these requests seek important background information needed to explain the history of the 777 Place Apartments and defendants' role in that history.  While much of this information is – or at least should be – undisputed, it is necessary for explaining the case to the jury.  Adv. Comm. Note, Fed. R. Evid. 401 ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.")

Third, each request asks about the relationship between a Picerne entity and the named Picerne defendants, Pomona Park and TPG.  That information is relevant and proportional to plaintiff's need to discover the identity of persons with knowledge about the operation of the 777 Place Apartments.  Adv. Comm. Note (2015), Fed. R. Civ. P. 26(b)(1) ("A portion of present Rule 26(b)(1) – [identity and location of persons who know of any discoverable matter] – is omitted from the proposed revision [because]  "such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples.")

Fourth, each request asks about rental dwellings owned or operated by Picerne entities in Pomona, not just about the 777 Place Apartments.  This inquiry arises directly from Picerne's intention, reflected in the OPA, to acquire and manage several Pomona apartment building, comprising 722 dwellings, not just the 472-units at the 777 Place Apartments.  (Exhibit 24/City 4, p. 2.)  As a general rule, an FHA plaintiff suing a landlord for housing discrimination is entitled to discover information about other rental dwellings operated by that defendant landlord. *See Indep. Living Ctr. of S. Cal. v. City of L.A.*, 296 F.R.D. 632, 635

(C.D. Cal. 2013) (ordering discovery related to apartment building which were not explicitly identified in complaint.) In all likelihood, however, this is probably a non-issue:  Defendants represented in a letter to plaintiff on November 4, 2020 that there are no other rental dwellings owned by the Picerne Group, Picerne Management Company, or Picerne Associates in the City of Pomona and indicated that they would supplement their discovery answers to that effect.  (Exhibit 47.) Defendants can therefore resolve this issue by simply supplementing as they promised.

**B.    Defendants' Argument Re:  Discovery Seeking Information Regarding the Relationship among Defendants and Their Principals, Successors, and Agents and Between Defendants and the Subject Rental Dwellings.**

Plaintiff's Requests for Production Nos. 2, 3, 4, 7, 9, 11, 13, 15, 16, 19, 20 and 21 seek records related to three irrelevant corporate entities (Picerne Associates, Picerne Management Company, and The Picerne Group) as well as records related to other dwellings owned by any of these entities in the City of Pomona.  Plaintiff admits these entities were identified through the 1996 Owner's Participation Agreement ("OPA") with the City of Pomona "granting access to affordable housing bond funding."  (*See* Brancart Declaration ("Brancart Decl.") Ex. 24.)  Importantly, the 1996 OPA clearly identifies the relevant entity holding the rights to the Property as defendant Pomona Park.  (Brancart Decl. Ex. 24 at p. City 3.)  The other Picerne entities are merely identified as affiliates providing related services in 1996.  Nevertheless, <u>Plaintiff's argument fails to clarify that the underlying bonds were refinanced in 1998 (Brancart Decl. Ex.  27) and fully satisfied in 2009 (Brancart Decl. Ex. 30), thereby terminating the OPA and leaving the only applicable restrictions on the Property the affordability covenants contained with the CC&Rs</u>.  (*Id*. at Ex. 30, ¶ 2.)  Having satisfied the bonds relevant to the OPA almost 12 years ago, discovery targeted towards the entities

referenced in the OPA is neither relevant to any party's claim or defenses nor proportional to the needs of the case.  Finally, and perhaps most importantly, Picerne Associates was dissolved in 2003 while Picerne Management Company was dissolved in 2004.  (Declaration of Stephen Farkas ("Farkas Decl.") at Exs. 50 and 51 respectively.)  The Picerne Group does not hold title to any property (Farkas Decl. ¶ 7.)  Regardless, Defendants will supplement their discovery responses to indicate that none of these entities hold property in the City of Pomona.

### 1.   *Plaintiff's Discovery Requests for Documents Regarding Unrelated Entities Is Not Proportional to the Needs of the Case*

Under Federal Rule 26(b)(1) the scope of permissible discovery is defined in the following manner:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. . .

In this case, the Property was owned and developed by defendant Pomona Park from 1996 through 2014.  In 2012, Pomona Park changed its name to TPG (Metropolitan) LLC.  (Answer/ECF 24, ¶ 7.)  At no point have Defendants disputed ownership of the Property.  Discovery related to formerly affiliated companies (Picerne Management and Picerne Associates) that were dissolved almost 2 decades ago is unduly burdensome and disproportionate to the needs of the case.  Therefore, further discovery should not be ordered as it will serve no purpose. Nevertheless, Defendants will supplement their responses to clarify that these entities do not own property in the City of Pomona.  In light of Defendants'

-24-

agreement to supplement the discovery, no further order is necessary.

### 2. *Plaintiff's Motion Was Filed 10 Months after the Meet and Confer*

Defendants served responses to Requests for Production Nos. 2, 3, 4, 7, 9, 11, 13, 15, 15, 16, 19, 20 and 21 on or around September 17, 2020 – over 10 months ago.  Since those responses were served, Defendants opened its tenant records for inspection at the Property, responded to numerous additional sets of written discovery and proceeded with depositions.  In fact, since receiving Defendants' follow up letter regarding the Parties' September 25th discovery conference on November 4, 2020, Plaintiff has not pursued these specific requests at all.  Having delayed this dispute for approximately 10 months without any further discussion between the parties, Plaintiff should be deemed to have waived the issue.  Regardless, given Defendants' agreement to supplement the responses to indicate no additional properties are owned in the City of Pomona and Plaintiff's lack of diligence on this issue, no further responses should be ordered.

## II.   DISCOVERY OF INFORMATION REGARDING ALLEGED DISPLACEMENT OF TENANTS AT THE 777 PLACE APARTMENTS.

HRC alleges in the first amended complaint that defendants TPG and Pomona Park systemically displaced tenants based on age (elderly tenants), then based on familial status (minor children), and finally based on source of income (Section 8 recipients).  (ECF 35, ¶¶ 26-33.)  Request 32-35,[8] 53, 56-57,[9] and 60[10]

---

[8] Request 32-35 were served by HRC in identical format on defendant TPG and defendant Pomona Park, and identical responses were served by TPG (Exhibit 2) and Pomona Park (Exhibit 3) on HRC.

[9] Request 53 was served by HRC in identical format on defendant TPG and

seek information regarding TPG's avowal of these alleged preferences. Request 37-40[11] seek information regarding the tenants to whom these alleged preferences applied.   Defendants deny each of these allegations in their answer  (ECF 24, ¶¶ 26-33).  In the parties' Joint Rule 26(f) report (ECF 28), defendants offer the following explanation instead:

> Additionally, in order to remain competitive with other proximately located housing providers, 777 Place Apartments has undergone several phases of upgrades and remodeling. During these remodels, existing tenants were offered a multitude of options ranging from early termination of their leases to relocation in other parts of the property at similar monthly rental rates. Decisions regarding building rehabilitation were made based on legitimate market factors and not targeted towards any specific subset of tenants.
> (ECF 28, p. 6.)

Request 47[12] seeks information regarding this alternative explanation of events.

- ***REQUEST FOR PRODUCTION NO. 32 TO DEFENDANT TPG***

---

defendant Pomona Park, Request 56-57 were served by HRC in unique format on defendant TPG and defendant Pomona Park, and unique responses to Request 53, 56-57 were served by TPG (Exhibit 12) and Pomona Park (Exhibit 43) on HRC.

[10] Request 60 was served by HRC on defendant TPG alone, and a response to Request 60 was served by TPG (Exhibit 13).

[11] Request 37-40 were served by HRC in identical format on defendant TPG and defendant Pomona Park, and identical responses were served by TPG (Exhibit 4) and Pomona Park (Exhibit 5) on HRC.

[12] Request 47 was served by HRC in identical format on defendant TPG and defendant Pomona Park, and identical responses were served by TPG (Exhibit 6) and Pomona Park (Exhibit 7) on HRC.

*AND DEFENDANT POMONA PARK:*  Please produce each document, dated or enforced at any time since January 1, 2009, that indicates a preference or limitation with respect to rental of dwellings at 777 Place Apartments on the basis of age.

RESPONSE TO REQUEST FOR PRODUCTION NO. 32 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:

Defendant objects to this request on the grounds that the terms "preference" and "limitation" are vague, ambiguous and overbroad. As a result of these vague terms, the Request calls for speculation, lacks foundations and is subject to multiple interpretations. Subject to and without waiving the foregoing, Defendant responds as follows: After a diligent search and reasonable inquiry, Defendant is unable to comply because the requested document never existed.

*   *   *

• ***REQUEST FOR PRODUCTION NO. 33 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***  Please produce each document, dated or enforced at any time since January 1, 2009, that indicates a preference or limitation with respect to rental of dwellings at 777 Place Apartments on the basis of familial status.

RESPONSE TO REQUEST FOR PRODUCTION NO. 33 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the terms "preference" and "limitation" are vague, ambiguous and overbroad. As a result of these vague terms, the Request calls for speculation, lacks foundations and is subject to multiple interpretations. Subject to and without waiving the foregoing, Defendant responds as follows: After a diligent search and reasonable inquiry, Defendant is unable to comply because the requested document never existed.

\* \* \*

• **_REQUEST FOR PRODUCTION NO. 34 TO DEFENDANT TPG_**
**_AND DEFENDANT POMONA PARK:_**  Please produce each document,
dated or enforced at any time since January 1, 2009, that indicates a
preference or limitation with respect to rental of dwellings at 777 Place
Apartments on the basis of student status.

RESPONSE TO REQUEST FOR PRODUCTION NO. 34 TO
DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant
objects to this request on the grounds that the terms "preference" and
"limitation" are vague, ambiguous and overbroad. As a result of these vague
terms, the Request calls for speculation, lacks foundations and is subject to
multiple interpretations. Subject to and without waiving the foregoing,
Defendant responds as follows: After a diligent search and reasonable
inquiry, Defendant is unable to comply because the requested document
never existed.

\* \* \*

• **_REQUEST FOR PRODUCTION NO. 35 TO DEFENDANT TPG_**
**_AND DEFENDANT POMONA PARK:_**  Please produce each document,
dated or enforced at any time since January 1, 2009, that indicates a
preference or limitation with respect to rental of dwellings at 777 Place
Apartments on the basis of source of income, including receipt of a rental
subsidy, such as a Section 8 Housing Choice Voucher.

RESPONSE TO REQUEST FOR PRODUCTION NO. 35 TO
DEFENDANT TPG AND DEFENDANT POMONA PARK:   Defendant
objects to this request on the grounds that the terms "preference" and
"limitation" are vague, ambiguous and overbroad. As a result of these vague
terms, the Request calls for speculation, lacks foundations and is subject to
multiple interpretations. Subject to and without waiving the foregoing,

Defendant responds as follows: After a diligent search and reasonable inquiry, Defendant is unable to comply because the requested document never existed.

*   *   *

•   ***REQUEST FOR PRODUCTION NO. 53 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** Any document among TPG's owners, managers, investors, or agent regarding the provision of student housing at the 777 Place Apartments at any time at any time since January 1, 2012.

DEFENDANT POMONA PARK  RESPONSE TO REQUEST FOR PRODUCTION NO. 53: Defendant objects to this Request on the grounds that it seeks documents unrelated to issues framed by the pleadings and outside the relevant period of potential liability under Plaintiff's Fair Housing claims. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the basis that the terms "regarding student housing" is vague and ambiguous. Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine. Subject to and without waiving the foregoing, Defendant states that after a diligent search and reasonable inquiry, Defendant is unable to comply with this Request because the documents have been lost, stolen or destroyed.

DEFENDANT TPG  RESPONSE TO REQUEST FOR PRODUCTION NO. 53: Defendant objects to this Request on the grounds that it seeks documents unrelated to issues framed by the pleadings and outside the relevant period of potential liability under Plaintiff's Fair Housing claims. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the basis that the terms "regarding student housing" is vague and

-29-

ambiguous. Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine. Subject to and without waiving the foregoing, Defendant will produce all responsive documents in its possession, custody or control.

* * *

• **REQUEST FOR PRODUCTION NO. 56 TO DEFENDANT POMONA PARK:** For the period at any time since January 1, 2012, any document that regards or reflects any decision or discussion whether to refuse to accept new tenants whose rent is subsidized by the Section 8 program for tenancy at the 777 Place Apartments.

DEFENDANT POMONA PARK  RESPONSE TO REQUEST FOR PRODUCTION NO. 56: Defendant objects to this Request on the grounds that it seeks irrelevant documents unrelated to Plaintiff's Fair Housing claims. (See e.g., Sabi v. Sterling (2010) 183 Cal.App.4th 916.) As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine. Subject to and without waiving the foregoing, Defendant states that after a diligent search and reasonable inquiry, Defendant is unable to comply with this Request because the documents have been lost, stolen or destroyed.

• **REQUEST FOR PRODUCTION NO. 56 TO DEFENDANT TPG:** For the period at any time since January 1, 2012, any document that regards or reflects any decision or discussion whether to refuse to accept new tenants whose rent is subsidized by the Section 8 program for tenancy at the 777 Place Apartments.

DEFENDANT TPG RESPONSE TO REQUEST FOR PRODUCTION NO. 56: Defendant objects to this Request on the grounds that it seeks irrelevant documents unrelated to Plaintiff's Fair Housing claims. (See e.g., Sabi v.

Sterling (2010) 183 Cal.App.4th 916.) As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine. Subject to and without waiving the foregoing, Defendant states that after a diligent search and reasonable inquiry, Defendant is unable to comply with this Request because due to the passage of time, the documents are no longer in its possession, custody or control.

\* \* \*

• **_REQUEST FOR PRODUCTION NO. 57 TO DEFENDANT POMONA PARK:_** For the period between January 1, 2009 and January 1, 2013, any document that regards or reflects any decision or discussion whether to terminate the tenancy of existing tenants at the 777 Place Apartments – or to refused to renew the tenancy of existing tenants at the 777 Place Apartments – whose rent was subsidized by Section 8. DEFENDANT POMONA PARK  RESPONSE TO REQUEST FOR PRODUCTION NO. 57: Defendant objects to this Request on the grounds that it seeks irrelevant documents unrelated to Plaintiff's Fair Housing claims. (See e.g., Sabi v. Sterling (2010) 183 Cal.App.4th 916.) As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine. Subject to and without waiving the foregoing, Defendant states that after a diligent search and reasonable inquiry, Defendant is unable to comply with this Request because the documents have been lost, stolen or destroyed.

• **_REQUEST FOR PRODUCTION NO. 57 TO DEFENDANT TPG:_** at any time since January 1, 2012, any document that regards or reflects any decision or discussion whether to terminate the tenancy of existing tenants

-31-

at the 777 Place Apartments – or to refused to renew the tenancy of existing tenants at the 777 Place Apartments – whose rent was subsidized by Section 8.

DEFENDANT TPG  RESPONSE TO REQUEST FOR PRODUCTION NO. 57: Defendant objects to this Request on the grounds that it seeks irrelevant documents unrelated to Plaintiff's Fair Housing claims. (See e.g., Sabi v. Sterling (2010) 183 Cal.App.4th 916.) As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine. Subject to and without waiving the foregoing, Defendant states that after a diligent search and reasonable inquiry, Defendant is unable to comply with this Request because due to the passage of time, the documents are no longer in its possession, custody or control.

\* \* \*

• ***REQUEST FOR PRODUCTION NO. 60 TO DEFENDANT TPG:*** Please produce a complete copy of any excel file or document discussing or regarding the data compiled in 777APTS 1586-1587 – attached as Exhibit 1 for reference – including any document that discusses the creation, purpose, or distribution of data compiled in 777APTS 1586-1587 or any similar data compilation reflecting the rental of dwellings at the 777 Place apartment pursuant to a HAP contract under the Section 8 or Housing Choice Voucher program.

RESPONSE TO REQUEST FOR PRODUCTION NO. 60 TO DEFENDANT TPG: Defendant objects to this Request on the grounds that it seeks irrelevant documents unrelated to Defendant's potential liability under Plaintiff's Fair Housing claims. (See e.g., Sabi v. Sterling (2010) 183 Cal.App.4th 916.) As such, the Request seeks documents that are not

relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the basis that the Request is vague and ambiguous as to what type of document would "discuss" or "regard" a statement. Therefore, the Request is vague, ambiguous, calls for speculation and does not describe the requested material with "reasonable particularity" as required by Federal Rule of Civil Procedure 34. Defendant further objects on the basis that the request is burdensome and harassing as it requests document previously demanded and provided in Plaintiff's prior discovery requests. Finally, Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine. Subject to and without waiving the foregoing, Defendant states that all responsive documents remaining in Defendants' possession, custody or control containing the data used to compile 777APTS 1586-1587 was provided to Plaintiff for inspection on October 16, 2020.

*   *   *

• ***REQUEST FOR PRODUCTION NO. 37 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** The original tenant files – as kept in the ordinary course of business – for each tenant who rented a dwelling at the 777 Place Apartment₁ since January 1, 2012.

RESPONSE TO REQUEST FOR PRODUCTION NO. 37 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the property known as 777 Place Apartments was known under another name during the specified time frame. As such the Request is vague, ambiguous and lacks foundation. The Request is also overbroad to the point of being harassing given that the plaintiff's claims are based on discrete allegations and not related to the entire occupancy of the property. Moreover, the request invades the privacy rights of third parties with little to no connection to the instant claims.

Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: To the extent records exist from the specified time period, Defendant will produce original tenant files in its possession, custody or control as they are maintained in the ordinary course of course of business. However, given the passage of time, additional documents may exist within the possession of the third party management companies employed to manage the property during the relevant time frame.

                                  *   *   *

• ***REQUEST FOR PRODUCTION NO. 38 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** To the extent separate files are maintained, the original files – as kept in the ordinary course of business – for each prospective tenant or rental applicant seeking to rent a dwelling at the 777 Place Apartment since January 1, 2012.

RESPONSE TO REQUEST FOR PRODUCTION NO. 38 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the property known as 777 Place Apartments was known under another name during the specified time frame. As such the Request is vague, ambiguous and lacks foundation. The Request is also overbroad to the point of being harassing given that the plaintiff's claims are based on discrete allegations and not related to the entire occupancy of the property. The Request is further vague and ambiguous as to the modification that "[t]o the extent separate files are maintained…" Moreover, the request invades the privacy rights of third parties with little to no connection to the instant claims. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and

-34-

without waiving the foregoing, Defendant responds as follows: After a diligent search and reasonable inquiry, Defendant is unable to comply because the requested documents are no longer in Defendants' the possession, custody or control.

\*   \*   \*

• ***REQUEST FOR PRODUCTION NO. 39 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** To the extent separate files are maintained, the original files – as kept in the ordinary course of business – for each eviction or notice to quit, filed or served at any time since January 1, 2012, related to the termination of occupancy of a dwelling at the 777 Place Apartment.

RESPONSE TO REQUEST FOR PRODUCTION NO. 39 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the property known as 777 Place Apartments was known under another name at certain points during the specified time frame. As such the Request is vague, ambiguous and lacks foundation. The Request is further vague and ambiguous as to the modification that "[t]o the extent separate files are maintained…" The Request is also overbroad to the point of being harassing given that the plaintiff's claims are based on discrete allegations and not related to the entire occupancy of the property. Moreover, the request invades the privacy rights of third parties with little to no connection to the instant claims. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: To the extent records exist from the specified time period, Defendant will produce original tenant files in its possession, custody or control as they are maintained in the ordinary course of course of business.

-35-

However, given the passage of time, additional documents may exist within the possession of the third party management companies employed to manage the property during the relevant time frame.

• **REQUEST FOR PRODUCTION NO. 40 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:** To the extent separate files are maintained, the original unit files – as kept in the ordinary course of business – for each dwelling unit rented or occupied since January 1, 2012 at The 777 Place Apartment.

RESPONSE TO REQUEST FOR PRODUCTION NO. 40 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this request on the grounds that the property known as 777 Place Apartments was known under another name at certain points during the specified time frame. As such the Request is vague, ambiguous and lacks foundation. Moreover, the Request for "original unit files" is vague, ambiguous and calls for speculation as to the information Plaintiff seeks to discovery. The Request is further vague and ambiguous as to the modification that "[t]o the extent separate files are maintained…" The Request is also overbroad to the point of being harassing given that the plaintiff's claims are based on discrete allegations and not related to the entire occupancy of the property. Moreover, the request invades the privacy rights of third parties with little to no connection to the instant claims. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: To the extent records exist from the specified time period, Defendant will produce original tenant files in its possession, custody or control as they are maintained in the ordinary course of course of business. However, given the passage of time, additional documents may exist within

the possession of the third party management companies employed to
manage the property during the relevant time frame.

* * *

• **REQUEST FOR PRODUCTION NO. 47 TO DEFENDANT TPG
AND DEFENDANT POMONA PARK:** Based on [TPG's or Pomona
Park's] statement in the Rule 26(f) report –

> 777 Place Apartments has undergone several phases of upgrades and
> remodeling. During these remodels, existing tenants were offered a
> multitude of options ranging from early termination of their leases to
> relocation in other building rehabilitation were made based on
> legitimate market factors and not targeted towards any specific subset
> of tenants. (ECF 28, p. 6)

– please produce material documents sufficient to determine – a. The nature,
units affected, and time period of each "upgrade[] and remodeling"; b. The
"multitude of options ranging from early termination of their leases to
relocation in other parts of the property at similar monthly rental rates,"
including any notices or communications to or from any affected tenants
regarding those options; c. The "legitimate market factors" related to each
"upgrade[] and remodeling"; and, d. The name, unit, and date of vacating of
tenants who vacated a unit subject to upgrading or renovation and the name,
unit, and first date of tenancy of tenants who replaced the vacating tenants
after the upgrade or renovation.

RESPONSE TO REQUEST FOR PRODUCTION NO. 47 TO
DEFENDANT TPG AND DEFENDANT POMONA PARK:   Defendant
objects to this Request on the basis that it is unduly burdensome and
harassing in that it seeks the disclosure of tenant files already produced in
response to numerous other Requests. Moreover, the Request calls for the
disclosure of information regarding third parties and their finances, thereby

-37-

invading their right to privacy under State and Federal law. Defendant further objects on the basis this information is equally available to Plaintiff though City, County and State organizations. Responding Party next objects to the extent this Request to the extent it purports to impose an obligation on it to make inquiries of independent witnesses who are not parties to this case, or to provide information from sources that are equally or more readily available to the propounding party. Responding Party further objects to the extent that this Interrogatory seeks information that is privileged and/or protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other common law or statutory privilege or protection. Responding Party further objects to the extent that this Interrogatory calls for a compilation of information and documents the propounding party already has in its possession, custody and control, or contained in documents produced in the course of this litigation, or in its offices or on its computers, and that the burden or expense of preparing or making a compilation, abstract, audit or summary would be substantially the same for the propounding party as for the Responding Party Subject to and without waiving the foregoing, Defendant responds as follows:  Defendant will produce tenant files in its possession, custody or control as they are maintained in the ordinary course of course of business.

**A.     Plaintiff HRC's Argument Re:  Discovery of Information Regarding Displacement of Tenants at the 777 Place Apartments.**

   *1.     <u>The factual basis for HRC's discovery regarding the displacement of tenants at the 777 Place Apartments.</u>*

Three sources provide the factual basis for this discovery and the underlying allegations in HRC's first amended complaint (ECF 35).  The <u>first</u> is complaints received by HRC from tenants who reported that they were ordered to vacate their homes by defendants or their managers.  (ECF 35, ¶¶ 26-30, 32.)  Copies of these

HRC records have been disclosed by HRC to defendants.  (Brancart Dec., ¶ 41.)
The second source is public records produced by the City of Pomona showing that
within a twelve-month period Picerne evicted every tenant from the 777 Place
Apartments whose rent was subsidized under the Section 8 program:

| Date Notice of Termination Was Signed By Defendants' Manager | Apartment No. | Doc No. |
|---|---|---|
| 09/20/2013 | 750/A15 | City 1105 |
| 12/27/2013 | 750/A27 | City 1116 |
| 11/27/2013 | 750/B26 | City 1127 |
| 09/23/2013 | 750/CC11 | City 1141 |
| 12/27/2013 | 750/I26 | City 1174 |
| 10/31/2013 | 750/J21 | City 1186 |
| 03/27/2014 | 750/K17 | City 1197 |
| 10/31/2013 | 750/N26 | City 1208 |
| 01/30/2014 | 750/P21 | City 1230 |
| 03/27/2014 | 750/T14 | City 1241 |
| 10/31/2013 | 750/U22 | City 1252 |
| 03/31/2014 | 750/V11 | City 1263 |
| 11/27/2013 | 750/X23 | City 1285 |
| 01/30/2014 | 750/X35 | City 1296 |
| 01/30/2014 | 750/Z21 | City 1307 |
| 09/24/2014 | 777/B106 | City 1329 |
| 01/30/2014 | 777/F105 | City 1344 |
| 03/27/2014 | 777/C303 | City 1355 |
| 12/27/2013 | 777/C311 | City 1366 |
| 03/27/2014 | 777/D202 | City 1379 |
| 02/27/2014 | 777/D207 | City 1390 |
| 03/27/2014 | 777/D304 | City 1400 |
| 10/31/2013 | 777/E101 | City 1422 |
| 03/27/2014 | 777/F204 | City 1444 |

(Exhibit 32.)  As a result of these evictions, the City reported that there are "no HCV/Section 8 Program Participants occupying the apartment complexes after 2014." (Exhibit 33.)  The <u>third</u> source is marketing plans provided by two of the four management companies[13] hired by Picerne to run the 777 Place apartment since 2010.   Defendant Asset Campus created a marketing plan in 2016 for Picerne that promised to achieve a "student demographic" at the 777 Place Apartments,  illustrated by a brochure entitled "777 Place:  Modern Student Living."  (Brancart Dec., ¶ 29.)[14] Greystar created a marketing plan for Picerne in 2020 that acknowledged Picerne's past student marketing efforts, sorted households based on student status, and promised in a series of recommendations to invest more in student marketing in order to increase by 20% the number of student-occupied dwellings at the 777 Place Apartments within one year.  (Exhibit 35/GS 0213.)

Defendants' responses to Request 47 and 37-40 are inadequate, and their responses to Request 32-35 and 53, 56-57, 60 are incredible.  In response to Request 47 and 37-40 regarding tenant records and tenant displacement, defendants did make available their physical tenant files, which HRC inspected and designated for copy on October 16, 2020.   (Brancart Dec., ¶ 9.) The copy service then produced these designated records to defendants, who reviewed them

_____

[13] The marketing plans devised by defendant Campus Asset and Greystar, prepared for and provided to Picerne, have been produced.  Of the other two management companies, FPI has indicated that it will respond to HRC's subpoena; Pierce Education Housing has objected to HRC's subpoena and has refused to produce records.  (Brancart Dec., ¶ 42.)

[14] This document was marked confidential by defendants; accordingly, it is not attached as an exhibit.

for privilege, Bates stamped them, and produced them to HRC on January 19, 2021.  (Brancart Dec., ¶ 9.) However, defendants have not produced any ESI from their property management system Entrata regarding their tenants, as requested in Request 37-40, despite promising to do so at a Local Rule 37 conference. (Brancart Dec., ¶¶ 8, 9; Exhibit 9.) Nor have defendants  produced any documents detailing the information that is sought by Request 47: information about unit upgrades and remodeling. At the same time, in response to Request 32-35 seeking documents indicating a preference or limitation based on Section 8, student, age (elderly), and familial status, defendants simply assert that the "requested documents never existed," and in response to Request 53, 56-57 seeking documents regarding internal decision-making about student and Section 8 tenants, Pomona Park simply asserts that "the documents have been lost, stolen or destroyed."

## 2. *The legal basis for HRC's discovery regarding the displacement of tenants at the 777 Place Apartments.*

HRC conferred with defendants pursuant to LR 37 on September 25, 2020 (Exhibit 8) and on January 6, 2021 (Exhibit 14) in an effort to resolve these disputes, but was unable to reach an agreement. The information requested in Request 47, 37-40 and Request 32-35, 53, 56-57, 60 is relevant and proportional for several reasons. The first amended complaint alleges that defendants violated the FHA and FEHA by evicting existing tenants based on age, familial status, and race.  (ECF 35, ¶¶ 61, 62.)  Information responsive to Request 47, 37-40 and Request 32-35, 53, 56-57, 60 is directly relevant to the question of whether defendants committed these discriminatory housing practices. *See*, *e.g.*, 24 C.F.R. 100.60(b)(5) (FHA bars "evicting tenants because of their race [or] familial status"); Cal. Govt. Code § 12955.6 (FEHA provides no fewer rights than those accorded under the FHA and its implementing regulations); 2 CCR § 12005(b)(1)(A) (FEHA bars eviction based on protected characteristics).

-41-

First, Request 47 and 37-40 seek information necessary to test a defense that defendants have put at the center of this action. Defendants acknowledge – as they must – that tenants were displaced from their homes by defendants, but disclaim discrimination:

> 777 Place Apartments has undergone several phases of upgrades and remodeling. During these remodels, existing tenants were offered a multitude of options ranging from early termination of their leases to relocation in other building rehabilitation were made based on legitimate market factors and not targeted towards any specific subset of tenants. (ECF 28, p. 6)

Request 47 seeks information to test the validity of this defense. Defendants' production of the tenant files alone, while partially responsive to Request 37-40, is inadequate. Those files contain information related to a specific household's tenancy, typically consisting of their rental application, agreement, and household-specific notices. (Brancart Dec., ¶ 9.) The decision to make significant capital expenditures to "upgrade and renovate" dwellings, though, is not something that would be reflected in documents contained in tenant files. Indeed, based on plaintiff's review, this universe of tenant-file documents does not contain records reflecting information responsive to this request (or defendants' assertion in the Rule 26(f) Report). But even if defendants' position were to be believed, the decision to displace and relocate tenant households as part of a renovation is a decision that involved Picerne. (*See*, *e.g.*, Brancart Dec., ¶ 35 [leases are renewed or cancelled in "compliance with standards established by the owner"]; Exhibit 41 at §§ 2.3, 2.6 [indicating that capital expenditures must be submitted to Picerne for approval].) Therefore, at the very least, additional responsive records in the control of the various Picerne entities should also exist, which would not be captured in the tenant files stored onsite at the 777 Place Apartments. Responsive information may be captured in the ESI stored on defendants' property

management system, Entrata, which was requested in Request 37-40, but defendants have reneged on their agreement to produce that ESI.

Second, Request 32-35 and 53, 56-57, 60 seek information to show that defendants held rental preferences on the basis of age (Request 32), familial status (Request 33), student status (Request 34), and Section 8 status (request 35), and that defendants made decisions about renting to students (Request 53) and refusing and evicting Section 8 residents (Request 56-57, 60). To be sure, plaintiff's pleaded claims are limited to discrimination on the basis of age, familial status, and race (enumerated, protected bases under the FHA and FEHA in 2013 and 2014), but defendants' decision to evict every Section 8 tenant from the 777 Place Apartments and to increase their proportion of student renters is highly relevant to HRC's fair housing claims of race, familial status, and age discrimination.

Unlike many landlords who previously elected not to participate in the Section 8 program, defendants here not only participated in the program but were obligated to accept Section 8 tenants as a condition of obtaining the City's affordable housing bond funding in 1998. Specifically, Picerne pledged "to accept as tenants, on the same basis as all other prospective tenants, lower-income persons who are . . . . Section 8 [recipients]." (Exhibit 28/City 164, p. 7.) And yet, as described above, within a twelve-month period, defendants evicted every Section 8 household from the 777 Place Apartments in spite of this pledge. The nature, basis, purpose, discussion, and implementation of defendants' decision to deviate from this obligation, to refuse to rent to future Section 8 tenants, and to evict existing Section 8 tenants is relevant evidence of discrimination on the basis of race, age, and familial status, since Section 8 tenants are disproportionately elderly, black, and low-income families with children. *Pac. Shores*, 730 F.3d at 1160 ("Proxy discrimination is a form of facial discrimination. It arises when the defendant enacts a law or policy that treats individuals differently on the basis of

seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group."); *Bronson v. Crestwood Lake Section 1 Holding Corp.*, 724 F. Supp. 148, 154-55 (S.D.N.Y. 1989) (Section 8 discrimination as a proxy for race discrimination); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-67 (1977) (explaining that discriminatory intent may be inferred from evidence that the defendant's action had a discriminatory effect or deviated from prior practice).

On top of the inferential weight that this evidence accords to a theory of disparate treatment, defendants' policy to evict existing and to refuse new Section 8 renters also had a disparate impact based on race and age, which directly violates the FHA and FEHA.  *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir. 2009); 2 CCR §§ 12060-12061 (FEHA disparate impact regulation).  Actions have a discriminatory effect in violation of the FHA if they "actually or predictably result in discrimination." *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745 (9th Cir.1996).  Data alleged in the first amended complaint – reflecting public records produced by HRC to defendants – provide a *prima facie* account of this discriminatory effect by demonstrating that the proportion of Section 8 recipients who are black and elderly is significantly higher than the proportion of such people in the general adult population of Pomona:

> Of the 1,182 persons receiving Section 8 Housing Choice Vouchers administered by the Pomona Public Housing Authority, 42 percent are black and 38 percent are age 65 or older.  Of the 152,366 persons residing within the City of Pomona, six percent are black and 10 percent are age 65 or older.  (ECF 3, ¶¶ 48, 49; ECF 35, ¶¶ 48-49.)

Finally, Defendants' assertions that documents reflecting defendants' preference or limitation with respect to the rental of dwellings at 777 Place based

-44-

on Section 8 or student status "never existed" or "have been lost, stolen or destroyed" is incredible.  Displacement implies replacement:  One tenant is displaced to make way for another.   Here, as alleged in the first amended complaint – and as corroborated by the management companies' marketing plans – defendants clearly had a preference for student renters.   As with Section 8 status, student status is not covered by either the FHA or FEHA.   But a practice to prefer students come freighted with the same evidentiary implications as a decision to eject all Section 8 households.  As alleged in the first amended complaint – and as corroborated by public records produced by HRC to defendants – a preference for university students portends a profound exclusion of renters on the basis of race (black), familial status (minor children), and age (elderly):

> Of the 3,833 students enrolled at Western University, the average age is 28. Only three percent of Western University's student body is black.   Of the 26,598 students enrolled at CalPoly/Pomona, 83 percent are age 24 or less. Only three percent of CalPoly's student body is black.   Of the 29,346 students enrolled at Mt. San Antonio Community College, 69 percent are age 24 or younger. Only four percent of Mt. San Antonio's student body is black.   (ECF 35, ¶¶ 45-47.)

These data are sufficient to justify discovery of documents reflecting the nature, basis, purpose, discussion, and implementation of defendants' decision to prefer university students as renters.  Picerne required each management company to sign a standard management agreement that expressly provided tenants were accepted "in compliance with standards established by Owner," using forms "approved by Owner, and on terms based upon criteria approved from time to time by Owner and based upon Manager's recommendations."  (*See*, *e.g.*, Brancart Dec., ¶ 35). The assertion by defendants that documents indicating a preference or non-preference for student renters or Section 8 recipients "never existed" or "have been lost, stolen or destroyed" is incredible.

During the parties' January 6, 2021 LR 37 conference, defendant Pomona Park agreed to conduct followup searches for materials that it had asserted "have been lost, stolen or destroyed" and to conduct a further search for materials responsive to Request 60. (Brancart Dec., ¶ 12.) However, Pomona Park has failed or refused to honor its agreements based on the January 6 conference.  It has provide no information as agreed, and it has provided no indication that it has conducted searches as agreed.  (Brancart Dec., ¶ 13.)

**B.     Defendants' Argument Re:  Discovery of Information Regarding Displacement of Tenants at the 777 Place Apartments.**

Plaintiff claims the documents sought by the second category requests all relate to the allegation that Defendants pursued a policy of favoring students over other classes of tenants.  On this point (and as a matter of context) it is important to highlight that between 1996 and the present, the downtown district of Pomona underwent a significant revitalization driven by Western University of Health Sciences ("Western").  Western is located directly across the street from the Property and, according to Plaintiff's own testing reports, the campus is visible from the model unit.  (Farkas Decl. Ex ¶ 22.)  In 1996, Western received its accreditation and grew from a few hundred students to over 3,900 employing over 1,200 individuals.  (Farkas Decl. Ex.  54.) Given this extreme demographic shift adding literally thousands of students directly across the street from the Property, it is undisputed that Defendants' marketing has moved towards serving the needs of this new population.  Regardless, the scope of the records Plaintiff seeks to compel is disproportionate to the needs of the case and a motion to compel is unnecessary.

Defendants have provided documents and code compliant responses to Requests 32, 33, 34, 35, 37, 38, 39, 40, 47, 53, 56, 57 and 60.  In addition, Defendants have provided Plaintiff with access to every tenant file remaining within Defendants' possession, custody, or control by allowing Plaintiff and their

copy service to come to the Property for an on-site inspection on October 16, 2020. Nevertheless, the discovery at issue seeks approximately 12 years' worth of records related to 472 separate units.  As such, in many instances some documents may not be available simply due to the passage of time.

### 1. *The Discovery Sought Is Not Proportional to the Needs of the Case Because it Involves Acts Beyond the Statute of Limitations*

Defendants' last Section 8 tenancy was reported to the City of Pomona in 2014.  (Brancart Decl. Ex. 33.)  Generally, civil court actions under the FHA are subject to a two year statute of limitations, which begins to run on the date of the last occurrence of discrimination.  42 U.S.C. § 3613.  Likewise, the statute of limitations under FEHA is presently 2 years from the date of the alleged discriminatory act.  Cal. Gov. Code § 12989.1.  Here, Defendants last reported a Section 8 tenancy to the City of Pomona in 2014.  Assuming that all Section 8 tenancies were terminated between 2013 and 2014, the statute of limitations to pursue any claims arising under these tenancies would have run in 2015 or 2016 – not 2020.  Therefore, regardless of Defendants' requirements under the regulatory documents related to the redevelopment bonds – which were unequivocally satisfied once the Bond was redeemed in 2009 – any claim arising under the Property's Section 8 Program prior to 2019 is now subject to dismissal under the applicable statute of limitations and discovery on this issue is irrelevant.

### 2. *Defendants Were Not Required to Accept Section 8 Tenants after the Redevelopment Bond Was Satisfied*

Between 2009 and January 1, 2020, participation in Section 8 program was merely voluntary. *Sabi v. Sterling*, 183 Cal.App.4th 916, 937 (2010).  In 1996, Mr. Kenneth Picerne (the Defendants' President) entered into an agreement with the City of Pomona to rehabilitate the Property in part through the use of affordable housing bonds.  (Brancart Decl. Ex. 24.) Importantly, while the property was participating in the Section 8 program at the time, nothing in the

1996 OPA required the Property accept Section 8 vouchers.  (*Id*.)  In 1998, the City of Pomona agreed to refinance the existing affordable housing bonds.  (Brancart Decl. Ex. 28.)  To accomplish the refinance, the parties executed an Amended and Restated Regulatory Agreement and Declaration of Restrictive Covenants ("1998 Bond Agreement").  Under the 1998 Bond Agreement, the Property was required to accept Section 8 tenants during the "Qualified Project Period."  (Brancart Decl., Ex. 28 §§ 3 and 3(g).) The 1998 Bond Agreement's definition section specifically defines the "Qualified Project Period" in the following manner:

> The period beginning on the first day on which at least 10 percent of the dwelling units in the Project were first occupied and ending on the later of (a) the date which is a qualified number of days after the date on which any of the dwelling units in the Project was first occupied, (b) the date on which any assistance provided with to the Project under Section 8 of the United States Housing Act of 1937 terminates or (c) the first day on which no tax-exempt bonds the proceeds of which were used to finance or refinance the Project are outstanding. (Brancart Decl. Ex, 28 at § 3 pp. 4-5.)

The bonds issued under the 1998 Bond Agreement were satisfied on April 15, 2009.  (Brancart Decl. Ex. 30.)  Therefore, the Qualified Project Period terminated on April 16, 2009 under subsection (c) given that "no tax-exempt bonds the proceeds of which were used to finance or refinance the Project [were] outstanding." (Brancart Decl. Ex. 28.)  Once the bonds were satisfied, the 1998 Bond Agreement terminated and the only restrictions applicable to the Property were the residency restrictions contained within the CC&Rs.  (Brancart Decl. Ex. 25.)  Importantly, the CC&R residency restrictions do not require a portion of the low income tenants to receive Section 8 assistance.  (*Id*.) Nevertheless, as of January 1, 2020, California landlords are required to accept Section 8 or housing vouchers as an income source from applicants.   Cal. Gov. Code §§ 12927 12955

(2020). Therefore, between 2009 and 2020, Defendants were not required to participate in the Section 8 program and the requested discovery is irrelevant. Consequently, discovery related to the displacement of Section 8 tenants at the Property in 2014 is not only irrelevant due to the statute of limitations, it is disproportionate to the needs of the case and improper under Federal Rule of Civil Procedure 26.

### 3. *Defendants Have Provided All Responsive Documents in Their Possession, Custody or Control*

On October 16, 2020, Defendants provided access to its tenant files – including those in storage – by allowing Plaintiff the opportunity to come to the location and copy the records they wanted.  (Farkas Decl. ¶ 9.) Additionally, Defendants have produced corporate records and communications in response to Plaintiff's written discovery requests. Finally, Defendants responses to Plaintiff's written discovery request were all in compliance with the Federal Rule of Civil Procedure.

#### i. *Requests 32, 33, 34 and 35*

Plaintiff's Requests for Production Nos. 32-35 all seek documents referencing a "preference or limitation with respect to rental" as to age, familial status, student status or source of income.   Defendants responded that "after a diligent search and reasonable inquiry, they were unable to comply because the requested documents never existed.  This is a valid response, as there simply are no documents referencing an express policy of "preference or limitation."  While there were marketing plans specifically designed to capture student tenants from the adjacent medical school, these documents were produced in response to other discovery requests and are not responsive to these requests.

#### ii. *Requests 56 and 57*

Requests 56 and 57 seek documents relevant to any the decision not to renew Section 8 tenancies between 2009 and 2014.  These decisions were based

on a series of renovations that were conducted at the Property in order to meet the changes occurring in the surrounding area due to both the City's efforts to revitalize its Historic Downtown District, as well as the adjacent medical school's ongoing expansion across the street.  Importantly, those efforts were undertaken 7 to 11 years ago.  Given the more than a decade's worth of time between these events and the present, some documents are no longer available.  However, the tenant files were maintained and all of those files were provided to Plaintiff.  Regardless, the statute of limitations has passed on any claims that may have been asserted as to these tenant displacements so the issue is moot.

### iii.    *Requests 60, 37, 38, 39, 40 and 47*

Requests 60, 37-40 and 47 all seek information either derived from, contained within, or the actual tenant records themselves.  To be clear, these are the records for the tenants who occupied the 472 separate units at the Property between 2009 and 2020 - an eleven year period.  Despite the extreme overbreadth of these requests, Defendants have either produced or made available all files that remain in their possession, custody or control by opening their records for inspection and copying on October 16, 2020.  (Farkas Decl. 9.)  While Plaintiff appears to demand that these records be made available in an alternative electronic format, the records were and are maintained in hard copy at the leasing office in their usual course.  As such, Defendants have complied with Rule 34(b)(2)(E)(iii) by producing the tenant files in hard copy.  Having complied with discovery, a further production is unnecessary, unwarranted and disproportionate to the needs of the case.

## III.    DISCOVERY OF INFORMATION REGARDING DEFENDANTS' RENTAL CRITERIA, RENTAL POLICIES, AND COMPLIANCE WITH AFFORDABLE HOUSING COVENANTS.

HRC alleges in the first amended complaint that defendants TPG and Pomona Park failed to comply with its covenants governing its affordability

restrictions (ECF 35, ¶ 25) and implemented rental criteria that discriminated on the basis of race, age, and familial status (ECF 35, ¶¶ 21, 31, 32).   Defendants deny these allegations.  (Answer/ECF 24, ¶¶ 21, 25, 31, 32.)   Defendants assert in the Joint Rule 26(f) Report:

> 777 Place Apartments has maintained its commitment to provide high quality, low-cost housing options to Pomona residents. In doing so, 777 Place Apartments has maintained the appropriate proportions of low income tenants and complied with all existing City, State and Federal requirements. To the extent Plaintiff questions any business decisions made in the course of 777 Place Apartments' operation, such decisions were made for legitimate, nondiscriminatory reasons.  (ECF 28, p. 6.)

Request 48-49 seek information regarding compliance with affordable housing covenants.[15] Interrogatory 15-16 seek information  regarding the defendants' understanding of the obligations conferred by those covenants. Request 61-64 seek information regarding the source, nature, and implementation of rental criteria employed by defendants in relation to those covenants.[16]

• **_REQUEST FOR PRODUCTION NO. 48 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:_**  Based on [TPG's or Pomona's

---

[15] Request 48-49 were served by HRC in identical format on defendant TPG and defendant Pomona Park, and identical responses were served by TPG (Exhibit 6) and Pomona Park (Exhibit 7) on HRC.

[16] Request 61-64 (Exhibit 15) and Interrogatory 15-16 were served by HRC on defendant TPG only. TPG served responses (Exhibit 16), supplemental responses (Exhibit 17), and second supplemental responses (Exhibit 18) to Request 61-64 and answers (Exhibit 19) and amended answers (Exhibit 20) to Interrogatory 15-16.

Park's] statement in the Rule 26(f) report –

> *777 Place Apartments has maintained the appropriate proportions of low income tenants and complied with all existing City, State and Federal requirements (ECF 28, p.7)*

– please produce any material document that reflects [TPG's or Pomona Park's] compliance with the requirement to rent a specific proportion of units to persons or families of very low and low to moderate incomes pursuant to any agreement, CCRs or commitment regulating [TPG or Pomona Park].

RESPONSE TO REQUEST FOR PRODUCTION NO. 48 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:  Defendant objects to this Request on the basis that it is duplicative of Request No. 18, Consequently, the Request is unduly burdensome and harassing. Moreover, the Request calls for the disclosure of information regarding third parties and their finances, thereby invading their right to privacy under State and Federal law. Defendant further objects on the basis this information is equally available to Plaintiff though City, County and State organizations. Responding Party next objects to the extent this Request to the extent it purports to impose an obligation on it to make inquiries of independent witnesses who are not parties to this case, or to provide information from sources that are equally or more readily available to the propounding party. Responding Party further objects to the extent that this Interrogatory seeks information that is privileged and/or protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other common law or statutory privilege or protection. Responding Party further objects to the extent that this Interrogatory calls for a compilation of information and documents the propounding party already has in its possession, custody and control, or contained in documents produced in the

course of this litigation, or in its offices or on its computers, and that the burden or expense of preparing or making a compilation, abstract, audit or summary would be substantially the same for the propounding party as for the Responding Party Subject to and without waiving the foregoing, Defendant responds as follows: See Defendant's response to request for Production No. 18.[17]

_____

[17] Defendant TPG and defendant Pomona Park provided identical responses to Request 18, which read in full:

REQUEST FOR PRODUCTION NO. 18:  Please produce each document reflecting written communications between [TPG or Pomona Park] and the City of Pomona regarding the terms, conditions, implementation, or performance of any agreement related to rental dwellings in Pomona, California.

RESPONSE TO REQUEST FOR PRODUCTION NO. 18:  Defendant objects to this request on the grounds that the request is overbroad as to time and scope in that it seeks documents related to issues beyond those framed by the pleadings and outside the time frame relevant to Plaintiff's Fair Housing claims. The claims asserted relate to the management and operation of one specific location during the time period of 2009 through the present: 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks discovery on "rental dwellings in Pomona, California" regardless of time. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Defendant further objects on the ground that this request for "each document reflecting written communications" related to or concerning

* * *

•       ***REQUEST FOR PRODUCTION NO. 49 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***  Based on [TPG's or Pomona Park's] statement in the Rule 26(f) report –

> *777 Place Apartments has maintained the appropriate proportions of low income tenants and complied with all existing City, State and Federal Requirements (ECF 28, p.[6])*

– please produce any document that discusses the application, exceptions,exclusions, or requirements to rent a specific proportion of units at the 777 Place Apartments to persons or families of very low and low to moderate incomes, including instructions, direction or guidance to onsite managers and their supervisors and reports, disclosures, or communications to LLC members, investors, or potential investors.

RESPONSE TO REQUEST FOR PRODUCTION NO. 49 TO DEFENDANT TPG AND DEFENDANT POMONA PARK: Defendant objects to this Request on the basis that it is unduly burdensome and harassing in that it seeks the disclosure of tenant files already produced in response to numerous other Requests. Moreover, the Request calls for the disclosure of information regarding third parties and their finances, thereby

---

unspecified topics such as "the terms, conditions, implementation, or performance of any agreement related to rental dwellings" is overbroad, vague and ambiguous. The ambiguous nature of the request renders it unintelligible to such an extent that Defendant cannot formulate a meaningful response. Subject to and without waiving the foregoing, Defendant agrees to produce responsive documents from the time period 2009 through the present in its possession, custody or control and relevant to 777 Place Apartments.

-54-

invading their right to privacy under State and Federal law. Defendant further objects on the basis this information is equally available to Plaintiff though City, County and State organizations. Responding Party next objects to the extent this Request to the extent it purports to impose an obligation on it to make inquiries of independent witnesses who are not parties to this case, or to provide information from sources that are equally or more readily available to the propounding party. Responding Party further objects to the extent that this Interrogatory seeks information that is privileged and/or protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other common law or statutory privilege or protection. Responding Party further objects to the extent that this Interrogatory calls for a compilation of information and documents the propounding party already has in its possession, custody and control, or contained in documents produced in the course of this litigation, or in its offices or on its computers, and that the burden or expense of preparing or making a compilation, abstract, audit or summary would be substantially the same for the propounding party as for the Responding Party.  Subject to and without waiving the foregoing, Defendant responds as follows: See Defendant's response to request for Production No. 27.[18]

_____

[18]  Defendant TPG and defendant Pomona Park provided identical responses to Request 27, which read in full:

REQUEST FOR PRODUCTION NO. 27: Please produce a set of the forms used by [TPG or Pomona Park] or its contractors in connection with rental or occupancy of dwelling at 777 Place Apartments since January 1, 2009, including any guidance regarding use of those forms.

RESPONSE TO REQUEST FOR PRODUCTION NO. 27: Defendant

\* \* \*

• ***REQUEST FOR PRODUCTION NO. 61 TO DEFENDANT TPG:***
Please produce any documents reflecting any communication, including

objects to this request on the grounds that the request is overbroad in that it seeks documents related to issues beyond those framed by the pleadings and irrelevant to Plaintiff's Fair Housing claims. The claims asserted relate to the allegedly discriminatory management and operation of 777 Place Apartments. The specific language used on any particular form in connection with the rental or occupancy of the dwellings is irrelevant and not proportional to the needs of this case. Moreover, the request invades the privacy rights of third parties with little to no connection to the instant claims. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: Defendant will produce tenant files in its possession, custody or control as they are maintained in the ordinary course of course of business. Additional documents may likely exist within the possession of the third party management companies employed to manage 777 Place Apartments during the relevant time frame. These third party managers include the following: FPI Management [800 Iron Point Rd. Folsom, CA 95630] (2009-2013); Pierce Education Property Management Co. [8880 Rio San Diego Dr. Suite 750, San Diego, CA 92108] (2013-2015); Asset Campus Housing Management Co. [675 Bering Dr. Suite 200, Houston, Texas 77057] (2015-2019); and Greystar California, Inc. 999 S. Shady Grove Rd. Suite 600 Memphis, TN 38120 (2019-Present).

emails, or discussion regarding operation or management of the 777 Place Apartments since January 1, 2009, in accordance restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748). SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 61 TO DEFENDANT TPG: Defendants object to this Request on the grounds that it seeks irrelevant documents unrelated to Defendant's potential liability under Plaintiff's Fair Housing claims. Plaintiff seeks to conflate its claims alleging a discriminatory preference for students with claims that Defendants have misinterpreted and/or otherwise failed to comply with the restriction set forth in the Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748). Defendants have already produced information in the form of tenant files and demographics relevant to Plaintiff's claim for disparate impact based on any alleged preference for students over other classes of tenants. As such, the Request seeks documents that are not relevant to the claims and defenses nor reasonably calculated to lead to admissible evidence, and not proportional to the needs of this case. See FRCP 26(b)(1). Plaintiff lacks standing to litigate Defendant's interpretation and compliance with the restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748) (See e.g., Farber v. Bay View Terrace Homeowners Assn., 141 Cal.App.4th 1007, 1011 (2006)[A party that does not "own[] land in a development subject to reciprocal restrictions cannot enforce them, absent showing the original covenanting parties intended to allow enforcement by one who is not a landowner"]; Declaration of Conditions, Covenants and Restrictions (96-2099748) § 3.2.) The FHA's protected classes are limited to "race,

color, religion, sex, familial status, [and] national origin." 42 U.S.C. § 3604.
Persons who qualify as "very low income" or "low to moderate income" are
not a protected class under the FHA. (See id.) In other words, no claim
exists that Defendant is liable under the FHA (or FEHA) for failure to rent
apartments to low income persons. Any such claim would stem from the
obligations of Defendant as a result of the CC&Rs and related agreements
with the City of Pomona and the Redevelopment Agency. Accordingly,
Plaintiff does not have standing to assert a claim regarding whether
Defendant was in breach of the income requirements stemming from the
CC&Rs. Defendant further objects on the basis that the Request is vague
and ambiguous as to what type of document would "discuss" or "regard"
"operation or management." Likewise, the term "in accordance restrictions"
is further vague, ambiguous and calls for speculation as to what the
Requesting Party intended. Therefore, the Request is vague, ambiguous,
calls for speculation and does not describe the requested material with
"reasonable particularity" as required by Federal Rule of Civil Procedure
34. Moreover, the Request is unduly burdensome and harassing because
compliance would require the review of approximately 12 years of records
for each of over 400 rental units. As a result of the Request's overbreadth, it
is disproportional "to the needs of the case, considering the importance of
the issues at stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources, the importance
of the discovery in resolving the issues, and whether the burden or expense
of the proposed discovery outweighs its likely benefit." (Fed R. Civ. Proc.
26(b)(1).) The Request is further unduly burdensome and harassing as it
seeks documents and records previously requested through Plaintiff's prior
discovery. (See 777APTS-000274-1394 and 777APTS-001442-1707.)
Defendant further objects to the extent the Request seeks personal/private

information of its tenants as such information is protected by their individual rights to privacy as provided under both State and Federal law. Finally, Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine.

\*   \*   \*

• ***REQUEST FOR PRODUCTION NO. 62 TO DEFENDANT TPG:***

Please produce any document regarding the procedures or standards used at any time since January 1, 2009, by any person or company that managed the 777 Place Apartments to implement the restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748).

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 62 TO DEFENDANT TPG: Defendants object to this Request on the grounds that it seeks irrelevant documents unrelated to Defendant's potential liability under Plaintiff's Fair Housing claims. Plaintiff seeks to conflate its claims alleging a discriminatory preference for students with claims that Defendants have misinterpreted and/or otherwise failed to comply with the restriction set forth in the Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748). Defendants have already produced information in the form of tenant files and demographics relevant to Plaintiff's claim for disparate impact based on any alleged preference for students over other classes of tenants. As such, the Request seeks documents that are not relevant to the claims and defenses nor reasonably calculated to lead to admissible evidence, and not proportional to the needs of this case. See FRCP 26(b)(1). Plaintiff lacks standing to litigate Defendant's interpretation and compliance with the restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the

-59-

Declaration of Conditions, Covenants and Restrictions (96-2099748) (See e.g., Farber v. Bay View Terrace Homeowners Assn., 141 Cal.App.4th 1007, 1011 (2006)[A party that does not "own[] land in a development subject to reciprocal restrictions cannot enforce them, absent showing the original covenanting parties intended to allow enforcement by one who is not a landowner"]; Declaration of Conditions, Covenants and Restrictions (96-2099748) § 3.2.) The FHA's protected classes are limited to "race, color, religion, sex, familial status, [and] national origin." 42 U.S.C. § 3604. Persons who qualify as "very low income" or "low to moderate income" are not a protected class under the FHA. (See id.) In other words, no claim exists that Defendant is liable under the FHA (or FEHA) for failure to rent apartments to low income persons. Any such claim would stem from the obligations of Defendant as a result of the CC&Rs and related agreements with the City of Pomona and the Redevelopment Agency. Accordingly, Plaintiff does not have standing to assert a claim regarding whether Defendant was in breach of the income requirements stemming from the CC&Rs. Defendant further objects on the basis that the Request is vague and ambiguous as to what type of document would "regard" "procedures or standards." Therefore, the Request is vague, ambiguous, calls for speculation and does not describe the requested material with "reasonable particularity" as required by Federal Rule of Civil Procedure 34. Moreover, the Request is unduly burdensome and harassing because compliance would require the review of approximately 12 years of records for each of over 400 rental units. As a result of the Request's overbreadth, it is disproportional "to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

-60-

discovery outweighs its likely benefit." (Fed R. Civ. Proc. 26(b)(1).) The Request is further unduly burdensome and harassing as it seeks documents and records previously requested through Plaintiff's prior discovery. (See 777APTS-000274-1394 and 777APTS-001442-1707.) Defendant further objects to the extent the Request seeks personal/private information of its tenants as such information is protected by their individual rights to privacy as provided under both State and Federal law. Finally, Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine.

*   *   *

•   ***REQUEST FOR PRODUCTION NO. 63 TO DEFENDANT TPG:*** Please produce any document regarding the forms used at any time since January 1, 2009, by any person or company that managed the 777 Place Apartments to implement compliance with the restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748). SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 63 TO DEFENDANT TPG: Defendants object to this Request on the grounds that it seeks irrelevant documents unrelated to Defendant's potential liability under Plaintiff's Fair Housing claims. Plaintiff seeks to conflate its claims alleging a discriminatory preference for students with claims that Defendants have misinterpreted and/or otherwise failed to comply with the restriction set forth in the Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748). Defendants have already produced information in the form of tenant files and demographics relevant to Plaintiff's claim for disparate impact based on any alleged preference for students over other classes of tenants. As such, the Request seeks

-61-

documents that are not relevant to the claims and defenses nor reasonably calculated to lead to admissible evidence, and not proportional to the needs of this case. See FRCP 26(b)(1). Plaintiff lacks standing to litigate Defendant's interpretation and compliance with the restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748) (See e.g., Farber v. Bay View Terrace Homeowners Assn., 141 Cal.App.4th 1007, 1011 (2006)[A party that does not "own[] land in a development subject to reciprocal restrictions cannot enforce them, absent showing the original covenanting parties intended to allow enforcement by one who is not a landowner"]; Declaration of Conditions, Covenants and Restrictions (96-2099748) § 3.2.) The FHA's protected classes are limited to "race, color, religion, sex, familial status, [and] national origin." 42 U.S.C. § 3604. Persons who qualify as "very low income" or "low to moderate income" are not a protected class under the FHA. (See id.) In other words, no claim exists that Defendant is liable under the FHA (or FEHA) for failure to rent apartments to low income persons. Any such claim would stem from the obligations of Defendant as a result of the CC&Rs and related agreements with the City of Pomona and the Redevelopment Agency. Accordingly, Plaintiff does not have standing to assert a claim regarding whether Defendant was in breach of the income requirements stemming from the CC&Rs. Defendant further objects on the basis that the Request is vague and ambiguous as to what type of document would constitute a "form" used "to implement compliance." Therefore, the Request is vague, ambiguous, calls for speculation and does not describe the requested material with "reasonable particularity" as required by Federal Rule of Civil Procedure 34. Moreover, the Request is unduly burdensome and harassing because compliance would require the review of approximately 12 years of records

for each of over 400 rental units. As a result of the Request's overbreadth, it is disproportional "to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (Fed R. Civ. Proc. 26(b)(1).) The Request is further unduly burdensome and harassing as it seeks documents and records previously requested through Plaintiff's prior discovery. (See 777APTS-000274-1394 and 777APTS-001442-1707.) Defendant further objects to the extent the Request seeks personal/private information of its tenants as such information is protected by their individual rights to privacy as provided under both State and Federal law. Finally, Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine.

* * *

• ***REQUEST FOR PRODUCTION NO. 64 TO DEFENDANT TPG:*** Please produce any document reflecting any effort, action, procedure, practice, policy or requirement by TPG or its predecessor, Pomona Park and Plaza, LLC, to ensure that its managers of the 777 Place Apartments implemented the restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748).

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 64 TO DEFENDANT TPG: Defendants object to this Request on the grounds that it seeks irrelevant documents unrelated to Defendant's potential liability under Plaintiff's Fair Housing claims. Plaintiff seeks to conflate its claims alleging a discriminatory preference for students with claims that Defendants have misinterpreted and/or otherwise failed to

comply with the restriction set forth in the Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748). Defendants have already produced information in the form of tenant files and demographics relevant to Plaintiff's claim for disparate impact based on any alleged preference for students over other classes of tenants. As such, the Request seeks documents that are not relevant to the claims and defenses nor reasonably calculated to lead to admissible evidence, and not proportional to the needs of this case. See FRCP 26(b)(1). Plaintiff lacks standing to litigate Defendant's interpretation and compliance with the restrictions set forth in Amended and Restated Regulatory Agreement (98-565771) or the Declaration of Conditions, Covenants and Restrictions (96-2099748) (See e.g., Farber v. Bay View Terrace Homeowners Assn., 141 Cal.App.4th 1007, 1011 (2006)[A party that does not "own[] land in a development subject to reciprocal restrictions cannot enforce them, absent showing the original covenanting parties intended to allow enforcement by one who is not a landowner"]; Declaration of Conditions, Covenants and Restrictions (96-2099748) § 3.2.) The FHA's protected classes are limited to "race, color, religion, sex, familial status, [and] national origin." 42 U.S.C. § 3604. Persons who qualify as "very low income" or "low to moderate income" are not a protected class under the FHA. (See id.) In other words, no claim exists that Defendant is liable under the FHA (or FEHA) for failure to rent apartments to low income persons. Any such claim would stem from the obligations of Defendant as a result of the CC&Rs and related agreements with the City of Pomona and the Redevelopment Agency. Accordingly, Plaintiff does not have standing to assert a claim regarding whether Defendant was in breach of the income requirements stemming from the CC&Rs. Defendant further objects on the basis that the Request is vague

-64-

and ambiguous as to what type of document would "reflect" an "effort, action, procedure, practice, policy or requirement" used to "to implement compliance." Therefore, the Request is vague, ambiguous, calls for speculation and does not describe the requested material with "reasonable particularity" as required by Federal Rule of Civil Procedure 34. Moreover, the Request is unduly burdensome and harassing because compliance would require the review of approximately 12 years of records for each of over 400 rental units. As a result of the Request's overbreadth, it is disproportional "to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (Fed R. Civ. Proc. 26(b)(1).) The Request is further unduly burdensome and harassing as it seeks documents and records previously requested through Plaintiff's prior discovery. (See 777APTS-000274-1394 and 777APTS-001442-1707.) Defendant further objects to the extent the Request seeks personal/private information of its tenants as such information is protected by their individual rights to privacy as provided under both State and Federal law. Finally, Defendant further objects on the basis of the Attorney/Client privilege and the Work Product Doctrine.

* * *

• **_INTERROGATORY NO. 15 TO DEFENDANT TPG:_** If TPG contends that it is not presently required to restrict 302 dwellings at the 777 Place Apartments1 for rental by persons or families pursuant to "income restrictions" set forth in the Declaration of Conditions, Covenants and Restrictions (96-2099748), recorded December 30, 1996, due to any intervening occurrence, including but not limited to the City of Pomona's

-65-

acquiescence, laches, release, or satisfaction, then please state [a] each reason or opinion that supports that contention, [b] each material fact that supports each reason or opinion, and [c] the supporting evidence reflecting each material fact.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15 TO DEFENDANT TPG: Subject to and without waiving the foregoing General Objections (which are expressly incorporated as if set forth herein), Defendant objects to this interrogatory on the basis that it is overbroad as to time and scope and seeks irrelevant information beyond the claims asserted in Plaintiff's pleadings. Defendant further objects on the ground that the interrogatory is unduly burdensome, harassing and exceeds the permissible scope of discovery because it seeks information unrelated to Defendant's potential liability under Plaintiff's Fair Housing claims. Specifically, Plaintiff lacks standing to litigate Defendant's interpretation and compliance with the Declaration of Conditions, Covenants and Restrictions (96-2099748) (See e.g., Farber v. Bay View Terrace Homeowners Assn., 141 Cal.App.4th 1007, 1011 (2006)[A party that does not "own[] land in a development subject to reciprocal restrictions cannot enforce them, absent showing the original covenanting parties intended to allow enforcement by one who is not a landowner"]; Declaration of Conditions, Covenants and Restrictions (96-2099748) § 3.2.) The FHA's protected classes are limited to "race, color, religion, sex, familial status, [and] national origin." 42 U.S.C. § 3604. Persons who qualify as "very low income" or "low to moderate income" are not a protected class under the FHA. (See id.) In other words, no claim exists that Defendant is liable under the FHA (or FEHA) for failure to rent apartments to low income persons. Any such claim would stem from the obligations of Defendant as a result of the CC&Rs and related agreements with the City of Pomona and the Redevelopment

Agency. Accordingly, Plaintiff does not have standing to assert a claim regarding whether Defendant was in breach of the income requirements stemming from the CC&Rs and Plaintiff's interrogatory therefore seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and also disproportional "to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (Fed R. Civ. Proc. 26(b)(1).) Defendant further objects to the extent the interrogatory seeks personal/private information of its tenants as such information is protected by their individual rights to privacy as provided under both State and Federal law. Finally, Defendant objects to the extent the interrogatory seeks non-public information protected by the Attorney/Client privilege and the Work Product Doctrine.

* * *

•     ***INTERROGATORY  NO. 16 TO DEFENDANT TPG:*** If TPG contends that the Declaration of Conditions, Covenants and Restrictions (96-2099748), recorded December 30, 1996, do not require TPG or its successors to restrict 123 dwellings at the 777 Place Apartment for occupancy as senior housing units subject to "income restrictions," then please state [a] each reason or opinion that supports that contention, [b] each material fact that supports each reason or opinion, and [c] the supporting evidence reflecting each material fact.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16 TO DEFENDANT TPG:  Subject to and without waiving the foregoing General Objections (which are expressly incorporated as if set forth herein), Defendant objects to this interrogatory on the basis that it is overbroad as to

-67-

time and scope and seeks irrelevant information beyond the claims asserted in Plaintiff's pleadings. Defendant further objects on the ground that the interrogatory is unduly burdensome, harassing and exceeds the permissible scope of discovery because it seeks information unrelated to Defendant's potential liability under Plaintiff's Fair Housing claims. Specifically, Plaintiff lacks standing to litigate Defendant's interpretation and compliance with the Declaration of Conditions, Covenants and Restrictions (96-2099748) (See e.g., Farber v. Bay View Terrace Homeowners Assn., 141 Cal.App.4th 1007, 1011 (2006)[A party that does not "own[] land in a development subject to reciprocal restrictions cannot enforce them, absent showing the original covenanting parties intended to allow enforcement by one who is not a landowner"]; Declaration of Conditions, Covenants and Restrictions (96-2099748) § 3.2.) The FHA's protected classes are limited to "race, color, religion, sex, familial status, [and] national origin." 42 U.S.C. § 3604. Persons who qualify as "very low income" or "low to moderate income" are not a protected class under the FHA. (See id.) In other words, no claim exists that Defendant is liable under the FHA (or FEHA) for failure to rent apartments to low income persons. Any such claim would stem from the obligations of Defendant as a result of the CC&Rs and related agreements with the City of Pomona and the Redevelopment Agency. Accordingly, Plaintiff does not have standing to assert a claim regarding whether Defendant was in breach of the income requirements stemming from the CC&Rs and Plaintiff's interrogatory therefore seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and also disproportional "to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (Fed R. Civ. Proc. 26(b)(1).) Defendant further objects to the extent the interrogatory seeks personal/private information of its tenants as such information is protected by their individual rights to privacy as provided under both State and Federal law. Finally, Defendant objects to the extent the interrogatory seeks non-public information protected by the Attorney/Client privilege and the Work Product Doctrine.

**A.**    **Plaintiff HRC's Argument Re: Discovery of Information Regarding Defendants' Rental Criteria, Rental Policies, and Compliance with Affordable Housing Covenants.**

   *1.*    ***The factual basis for the discovery of information regarding defendants' rental criteria and compliance with the affordable housing covenants.***

Two sources provide the factual basis for this discovery and the underlying allegations in HRC's first amended complaint (ECF 35).  The <u>first</u> is public records obtained from the City of Pomona.  These records show that Picerne failed or refused to report its compliance with the affordable housing covenants to the City. The City demanded that Picerne report its compliance with the affordable housing covenant in 2015 (Exhibit 36) and in 2016 (Exhibit 37), but Picerne failed to respond until 2019, when the City threatened to sue Picerne unless it reported its compliance (Exhibit 38).  The 1998 Amended and Restated Regulatory Agreement, executed by Picerne, mandated that Picerne collect and maintain specific income qualification information for each resident who qualified for affordable housing and that Picerne report that information to the City on a quarterly basis. (Exhibit 28/City 165, p. 8.)  It mandated that Picerne use a detailed form substantially similar to those appended to the 1998 agreement.  (Exhibit 28/City 190, p. 36.)  The 1998 housing bond, whose proceeds the City lent to Picerne to refinance his acquisition of the 777 Place apartment on more favorable

terms, explicitly extended these requirements until 2026:

> The Borrower has entered into an Owner Participation Agreement (the "OPA") with the Issuer, under which the Issuer loaned the Borrower $500,000 (the "Issuer Loan") for the rehabilitation and acquisition of the Project. The Issuer Loan will be repaid upon the issuance of the Bonds. However, the OPA and the associated Declaration of Conditions, Covenants and Restrictions **will continue to impose occupancy restrictions on the Project which require that at least 20 % of the units be rented to very low income persons or families, wherein the annual income does not exceed 50% of the area median income, adjusted for family size, and that 44% of the units be rented to low and moderate income persons or families, wherein the annual income is between 51 % and 120% of the area median income, adjusted for family size.** The remaining 36% of the units will have no occupancy or rent restrictions. **The restricted income units will have a requirement for affordable rents which cannot exceed 30 % of the maximum monthly U.S. Department of Housing and Urban Development qualifying income for a two-person household in a one-bedroom unit and a four-person household in a two-bedroom unit.** The occupancy requirements are to be maintained for 30 years from and after the date of recording of the Declaration of Conditions, Covenants and Restrictions. (Exhibit 29, Attachment I.)

All told, these are regulatory requirements that directly impact the management, marketing, and demographics of the tenant population of the 777 Place Apartments. Picerne asserts that defendants are in compliance, i.e., that the 777 Place Apartments has maintained the appropriate proportions of low income tenants and complied with all existing City, State and Federal Requirements. (ECF 28, p. 5.) If that assertion were true, then it would also be true that there would be communications, directions, and instructions from Picerne to its management

companies and employees regarding the duty to comply with these requirements. It would also be probable that there would be some records reflecting or acknowledging these duties by Picerne employees, principals, and investors, along with some discussion about how those duties were to be met.   Request 48-49 seek those kinds of documents, including "instructions, direction or guidance to onsite managers and their supervisors and reports, disclosures, or communications to LLC members, investors, or potential investors."  But Picerne has produced none; instead, it points to the tenant files as the source where such information may be found.  To be sure, if defendants did indeed comply with their reporting obligations, it is possible that there would be some documentation reflecting tenant income qualification for income-restricted units in the paper tenant files (though plaintiff has found none).  But tenant files are not the place where Picerne would store communications, directions, and instructions that it issued to its managers and employees about their duty to qualify tenants based on the HUD's low-income standard or about how they should implement and determine whether a rental applicant meets that standard.

The <u>second</u> source is defendants' records.  Defendants have produced copies of various rental criteria that they have applied over the past 13 years, including the following:

| Year Form Was in Use | Management Company or Name of Dwelling | Bates No.[19] |
|---|---|---|
| 2007 | Sunrise Management | 777APTS-003291 |
| 2009 | University Village | 777APTS-003718 |
| 2009 | The Metropolitan at University Village | 777APTS-003710 |

---

[19] These documents were marked confidential by defendants; accordingly, they are not attached as exhibits.

| 2014 | Pierce Property Management | 777APTS-004113 |
| 2015 | Pierce Property Management | 777APTS-002938 |
| 2016 | Asset Campus Housing | 777APTS-002858 |
| 2018 | Asset Campus Housing | 777APTS-004173 |
| Undated | Asset Campus Housing | ACULLC-000128 |

Based on these records, plaintiff knows for sure that defendants have indeed applied certain rental criteria during their operation of the 777 Place Apartments and have targeted local university students as tenants. But none of these documents reflect how the defendants' rental criteria comport with their obligation to rent to low-income tenants, as requested in Request 48-49. Nor do any of them reflect any "instructions, direction or guidance to onsite managers and their supervisors and reports, disclosures, or communications to LLC members, investors, or potential investors" regarding the application of these criteria, as requested in Request 49.

Incorporating their response to Request 27 by reference, defendants purport that these additional documents "likely exist within the possession of the third party management companies employed to manage 777 Place Apartments during the relevant time frame," and they instruct plaintiff to contact FPI Management, Pierce Education Property Management Co., Asset Campus Housing Management Co., and Greystar California, Inc. instead.  Defendants' position, however, is belied by the management agreements that govern their relationship with those companies.  Those agreements provide that each management company "sign, renew and cancel tenant leases for the Property in compliance with **standards established by Owner**, on the lease form provided by Manager and **approved by Owner**, and on terms based upon **criteria approved from time to time by Owner** and based upon Manager's recommendations." (Brancart Dec., ¶ 35.) Pursuant to these management agreements, Picerne, the owner of the 777 Place Apartments, should possess the documents that plaintiff seeks through this

discovery.

### 2.     *The legal basis for discovery of information regarding defendants' compliance with the affordable housing covenants.*

Information reflecting Picerne's disregard of its continuing duties to implement its affordable housing obligation providing occupancy to low-income tenants is relevant and proportional to HRC's efforts to prove its FHA and FEHA claims under the disparate treatment and disparate impact theories.

Under the disparate impact theory, HRC must point to a practice that generates a disparate impact based on race, age, or familial status.  Picerne's breach of its affordable housing obligations and its duty to qualify rental applicants as low-income is one such practice.   Evidence will show that income is disproportionally distributed between black and whites renters, an unremarkable observation that can be best established with judicially noticeable data.  *See*, *e.g,* *America's Rental Housing 2020*, p.29 (HJCHS 2020) ("The average income of white renters was $43,000 in 2018, compared with an average of $39,667 for all minority renters. But among households with incomes under $15,000, some 85 percent of Hispanic renters were cost burdened in 2018, along with 84 percent of black renters and 83 percent of Asian/other renters.")  Given that disparate distribution, a qualification standard that favors low-income renters will disproportionately favor black renters. Reversed, as alleged here, a practice that abrogates or disregards a qualification standard that favors low-income renters will disproportionately disfavor black renters.

 Information reflecting Picerne's violation or disregard of its affordable housing covenant is also relevant to proof of HRC's FHA and FEHA claims under the disparate treatment theory.   Discriminatory intent – like all mental states – is an abstract concept that cannot be directly observed.   Instead, its existence must be detected either through affirmation by the discriminating actor in the form of a discriminatory statement or expressive conduct (direct evidence) or inferred from

observations of the discriminating actor's decisional behavior (circumstantial evidence). *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008). Statements of discriminatory intent are rare.   Much more commonly, plaintiffs must resort to proving disparate treatment using circumstantial evidence, either directly using a mosaic of factors (*Arlington Heights* framework) or indirectly using burden-shifting (*McDonnell-Douglas* framework).   Because this action alleges that defendants engaged in a pattern or practice of discrimination, the *Arlington Heights* framework fits best. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158–59 (9th Cir. 2013) (explaining that a plaintiff need not rely on the *McDonnell-Douglas* approach to intentional discrimination but may instead produce circumstantial evidence of intentional discrimination using the *Arlington Heights* method).   Under the *Arlington Heights* framework, evidence relevant to determining defendants' intentionality includes the historical background related to defendants' obligation to provide affordable housing, *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)*; Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158–59 (9th Cir. 2013), the sequence of events leading to defendants' disregard of their affordable housing duties, *Arlington Heights,* 429 U.S. at 66-67; *Pac. Shores*, 730 F.3d at 1158–59, and communications reflecting an understanding of the effect of defendants' decision to disregard their affordable housing duties, *Arlington Heights,* 429 U.S. at 266;  *Pac. Shores*, 730 F.3d at 1158–59.  Given their repeated, recorded agreements to enforce affordable housing restriction, defendants' breach of those agreements may – with other evidence – support an inference of discriminatory intent.  *Ibid.*

Whether this evidence ultimately supports an inference of discriminatory intent – or hardened into a proxy for race – is a question for finder of fact. *Pac. Shores*, 730 F.3d at 1160 ("Proxy discrimination is a form of facial discrimination. It arises when the defendant enacts a law or policy that treats individuals

-74-

differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group.") Accordingly, the information requested in Request 48-49 and 61-64 is relevant and proportional to the needs of this case.

Finally, if defendants intend to contend that they are *not* bound by the aforementioned restrictions established by the covenants -- which form the basis of Request 48-49 and 61-64 -- then plaintiff needs to know the facts supporting that contention. Interrogatory 15-16 represents a proportional approach to discovering that relevant information.

**B.    Defendants' Argument Re: Discovery of Information Regarding Defendants' Rental Criteria, Rental Policies, and Compliance with Affordable Housing Covenants.**

Plaintiff's First Amended Complaint ("FAC") alleges that Defendants have pursued a discriminatory practice of favoring students over other protected classes. (*See* Farkas Decl. Ex. 48, FAC 26, 31, 32, 34-37 and 50. ) Despite clearly defining the alleged discriminatory practice as a preference for students, Plaintiff also alleges facts purporting to identify separate obligations arising under the Property's CC&Rs and various regulatory agreements related to redevelopment bonds issued by the City of Pomona. (*See Id.* FAC 11-25.) Specifically, Plaintiff alleges that under the CC&Rs, Defendants must "rent twenty percent (20%) of the units to very low income persons or families wherein the annual income does not exceed fifty percent (50%) of median income for the area, forty-four percent (44%) of the units will be rented to persons or families of low or moderate income, fifty percent to one hundred twenty percent (50% to 120%) of area median income, and thirty six percent (36% ) of the units will have no rent restrictions" through 2026." (*See Id.* FAC 15.) Plaintiff further alleges that Defendants have failed to comply with an annual reporting obligation imposed by the CC&Rs by

not submitting annual reports to the City of Pomona documenting CC&R compliance. (*See Id.* FAC  25.)  The issue of discriminatory housing practices based on a preference for students is distinct from issues arising under Defendants' compliance with the CC&Rs.

Plaintiff's causes of action under the FHA and FEHA do not provide standing to litigate Defendants' compliance with the CC&Rs.  Moreover, given the allegation that Defendants' alleged discriminatory conduct arises from a purported preference for students, CC&R compliance is irrelevant. Therefore, Plaintiff's discovery request exceeds the bounds of proportionality.

### 1.    *Plaintiff Lacks Standing to Compel Discovery Related to CC&R Compliance*

A threshold question in every federal case is whether the plaintiff has standing to bring the action. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The United States Supreme Court has long held that claims brought under the FHA are to be judged under a very liberal standing requirement.  The sole requirement for standing under the FHA is the "Article III minima of injury in fact." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).  If an organization's ability to function or to provide its core services is impaired by an allegedly unlawful action, and it suffers "the consequent drain of [its] resources" as a result, that organization has standing to bring suit.  *Id.* at 369, 378-379 (superseded on other grounds by statute 42 U.S. § 3613(a)(1)(A)).  To meet this requirement in a discrimination case, a plaintiff need only "allege that as a result of the defendant's actions he has suffered a 'distinct and palpable injury.'" *Id.* at 372.  HRC's allegations in Paragraphs 52-55 of the FAC are sufficient, and have been recognized as a compensable injury, for purposes of standing to pursue FHA claims alleging discrimination.  *See Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1166 (9th Cir. 2013) (citing *Walker v. City of Lakewood*, 272 F.3d 1114, 1124-25 (9th Cir. 2001); *Convoy Co. v. Sperry Rand Corp.*, 672 F.2d 781,

785-86 (9th Cir. 1982).

Neither the FHA nor FEHA provide Plaintiff with standing to challenge Defendants' compliance with or interpretation of the CC&Rs.  The FHA's protected classes are limited to "race, color, religion, sex, familial status, [and] national origin."  42 U.S.C. § 3604.  Persons who qualify as "very low income" or "low to moderate income" are not a protected class under the FHA. *See Id*.  In other words, no claim exists that Defendants are liable under the FHA (or FEHA) for failure to rent apartments to low income persons.  Any such claim would stem from Metropolitan's obligations as a result of the CC&Rs and related agreements with the City of Pomona and the Redevelopment Agency – both non-parties.  Accordingly, HRC does not have standing to assert a claim regarding whether Defendants were in breach of the CC&R's income requirements and discovery targeted towards Defendants' compliance serves no purpose under the asserted causes of action.

More importantly, the CC&Rs between Pomona Park and the Redevelopment Agency for the City of Pomona expressly (and exclusively) grant enforcement rights to the Agency: "The Agency has the right, but not the obligation, to enforce all of the provisions of this Declaration."  (Brancart Decl. Ex. 25, CC&Rs at § 3.2.)  As a general rule, restrictions on the use of land are unenforceable by a party who does not own any of the property intended to be benefited.  (*See Young v. Cramer* (1940) 38 Cal.App.2d 64, 66 [transferee of grantor's right of reentry was denied right of forfeiture for violation of condition on ground that he owned no land in the tract and was not injured by violation]; *Wing v. Forest Lawn Cemetery Assn*. (1940) 15 Cal.2d 472, 483 [failure to show probable injury]; *Townsend v. Allen* (1952) 114 Cal.App.2d 291, 297 [grantor without interest, waiver, changed conditions]; *Kent v. Koch* (1958) 166 Cal.App.2d 579, 584 [restriction is unenforceable by grantor after he or she no longer owns any of the property intended to be benefited].)  This is because

agreements such as the CC&Rs at issue are servitudes that bind the parties: the covenantor (promisor) and the covenantee (promisee).  Plaintiff not only lacks standing under the FHA and FEHA to litigate claims arising under the CC&Rs, the documents themselves specifically identify the Redevelopment Agency for the City of Pomona as the proper party to any action involving compliance.  Therefore, discovery related to compliance and the potential breach of these restrictions is irrelevant and beyond Plaintiff's standing.

## 2. *Plaintiff Combines Defendants' Former Obligations under the OPA with the Existing CC&Rs.*

Plaintiff's claims (and discovery requests) confuse former affordable rent requirements applicable under the now-satisfied regulatory bond and existing occupancy requirements under the CC&Rs.  For example, Plaintiff seeks discovery regarding Defendants' CC&R compliance tracking and reporting to the City of Pomona.  (Requests for Production Nos. 61-63 and Special Interrogatories Nos. 15-16.)  Compliance reporting was imposed by the 1998 Bond Agreement was expressly limited to "the term of this Regulatory Agreement."  (Brancart Decl. Ex, 28, § 4(e).) While the City has inquired about the CC&Rs over the past 10 years, Defendants provided reports out of comity - not because they were expressly required by any in-force contractual obligation.

In sum, Plaintiff's entire position on the discovery targeted towards Defendants' relationship with the City of Pomona suffers from the incorrect assumption that all of the requirements under the regulatory documents were imposed by the CC&Rs.   Even a cursory reading of the documents demonstrates that the CC&Rs were significantly less restrictive than the underlying regulatory documents.  These additional restrictions were precisely the reason why Defendants opted to satisfy the bonds early.  Regardless, Plaintiff lacks standing to compel discovery related to Defendants' compliance with the CC&Rs and former regulatory agreements because it lacks standing to enforce the restrictions.

### 3.     *The Alleged Injury Is a Preference for Students - Not CC&R Compliance*

Plaintiff asserts that discovery regarding CC&R compliance and interpretation is germane to identifying an alleged disparate impact caused by the alleged policy of favoring students over other classes of tenants.  This argument assumes more than is allowed under Plaintiff's asserted causes of action. Specifically, under the federal Fair Housing Act (FHA), a disparate-impact claim challenges practices that have a "disproportionately adverse effect" on those protected by applicable fair housing laws and are otherwise unjustified by a legitimate rationale. *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). The elements of a *prima facie* case under the FHA for disparate impact were articulated in *Pfaff v. U.S. Dept. of Housing and Urban Development*, 88 F.3d 739, 745 (9th Cir. 1996): "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Id*. Demonstration of discriminatory intent is not required under disparate impact theory. *Id*.at 745–46, 746 n. 2.

Here, the alleged practice at issue is Defendants' purported preference for student tenants.  Notably, a preference for students has nothing to do with Defendants' CC&R compliance.  A review of disparate impact cases demonstrates that CC&R enforcement and compliance is unrelated to the types of "neutral policies" leading to disparate impacts on protected classes.  *See e.g. Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 248, (9th Cir. 1997)(Facially neutral practice of refusing to rent to an applicant receiving aid to families with dependent children benefits had a discriminatory effect upon families with children); *Keith v. Volpe*, 858 F.2d 467, 484 (9th Cir. 1988) (municipality's refusal to approve affordable housing development for tenants displaced by a freeway had a discriminatory effect, where two-thirds of displaced low-income tenants were

minorities); *Dep't. Fair Empl. & Hous. v. Merribrook Apts*. (Nov. 9, 1988) 1988 WL 242651, *14 (Cal. F.E.H.C.) (One person per bedroom occupancy standard has discriminatory effect on families with children).  While the issue of whether Defendants have preferred students over families and seniors is properly reserved until trial, Defendants' compliance with annual reporting requirements to the City of Pomona, or compliance with the CC&R affordability proportions, is not only beyond the scope of Plaintiff's standing, but completely removed from the types of acts either the FHA or FEHA were designed to oversee.  Therefore, Plaintiff lacks standing to pursue these issues and should not be allowed to litigate claims or compel discovery arising under the CC&Rs.

### 4. *Discovery Related to CR&R or Regulatory Compliance Is Overbroad and Disproportionate to the Needs of the Case .*

Plaintiff has clearly articulated that the alleged discriminatory practice at issue in this case is a preference for students over other classes of tenants.  (Farkas Decl. Ex. , FAC  50.)  Despite the well-defined scope of the claims, Requests for Production 48, 49, 61-64 and Special Interrogatories 15-16 seek facts and documents related to Defendants' interactions with the City of Pomona.  Such information is patently irrelevant to Plaintiff's asserted claims and therefore improper under FRCP Rule 26(b).

### i. *Requests 48-49*

Requests 48 through 49 seek documents supporting Defendants' statements that they have complied with all applicable restrictions on the Property as well as all local, State and Federal housing requirements.  Defendants' response and corresponding document production satisfies their obligations under the Federal Rules.  Indeed, Defendants produced their compliance reporting to the City of Pomona for years 2017, 2018 and 2019, as well as all of the underlying tenant demographic data included within their rental application.  This data represents all of the information Defendants have available to demonstrate their compliance with

the applicable restrictions and fair housing requirements on the Property.

Likewise, all of the management agreements with the Property's third party managers specifically reference the existing CC&Rs and property restrictions (Brancart Decl. Exhs. 39-41 at § 2.11).  The management agreements further clarify that the managers would familiarize themselves and assist the Owners with fair housing compliance. (*Id.*)  Therefore, Defendants have complied with their discovery obligations by providing the documents within their possession, custody and control.

Finally, Defendants have produced the criteria used to evaluate all tenant applications.  The tenant files include all of the information collected from the tenants during the application process - including all of the checklists and forms the applicants were required to complete and submit.  Any changes or modifications to these forms over time is reflected in the documents contained within the tenant files. All of these records were made available to Plaintiff and no further records remain.

### ii. *Requests 61-64 and Special Interrogatories 15-16*

Requests 61-64 and Special Interrogatories 15-16 all specifically seek information regarding (1) the fully-satisfied 1998 Bond Agreement or (2) the CC&Rs, including Defendants' communications with or regarding the City of Pomona.  To establish disparate impact, Plaintiff must identify a neutral practice that creates or leads to a disparate impact on a protected class. Defendants' alleged failure to comply with the CC&Rs is not such a practice because if Defendants are in breach of the covenants - an assumption Defendants deny - the City of Pomona would have a cause of action for enforcement.  Nevertheless, the demographic information Plaintiff seeks is presented in the tenant files, including the occupants' stated ages, income history and racial backgrounds.

As addressed above, whether Defendants favored younger students over families and seniors has no bearing on whether Defendants reported their income

1  demographics timely, or whether Defendants implemented local strategies to

2  comply with the CC&Rs.

3      In sum, Defendants' purported failure to comply with the CC&Rs is not a

4  facially neutral policy resulting in a disproportionate impact on protected classes.

5  CC&R litigation is simply beyond the scope of Plaintiff's claims and standing. *See*

6  *e.g., Farber v. Bay View Terrace Homeowners Assn.*, 141 Cal.App.4th 1007, 1011

7  (2006)[A party that does not "own[] land in a development subject to reciprocal

8  restrictions cannot enforce them, absent showing the original covenanting parties

9  intended to allow enforcement by one who is not a landowner"]; (*See also*,

10  Brancart Decl. Ex. 28, CC&Rs, § 3.2 providing enforcement rights to the City of

11  Pomona.)   Therefore, no further discovery should be ordered on issues related to

12  Defendants' compliance with the CC&Rs or communications with the City of

13  Pomona.

14  **IV.    DISCOVERY OF INFORMATION REGARDING THE**

15  **MARKETING OF RENTAL DWELLINGS AT THE 777 PLACE**

16  **APARTMENTS**.[20]

17      HRC alleges in the first amended complaint that defendants TPG and

18  Pomona Park engaged in a prolonged campaign to market rental dwellings at the

19  777 Place Apartments to university students (ECF 35, ¶¶ 10, 34, 37, 38) in

20  contrast to their obligations to market them to low-income persons in need of

21  affordable housing (ECF 35, ¶¶ 14, 18). HRC's requests 26, 42, 43, 44, and 46

22  seek information from defendant TPG and defendant Pomona Park regarding this

23  marketing.

24  _____

25      [20] The requests referenced in this section were served by HRC in identical

26  format on defendant TPG and defendant Pomona Park, and identical responses

27  were served by TPG (Exhibit 2, Exhibit 6) and Pomona Park (Exhibit 3, Exhibit 7)

28  on HRC.

***REQUEST FOR PRODUCTION NO. 26 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***   Please produce documents sufficient to determine the email addresses used by principals, employees, agents or contractors in connection with the management, rental, or marketing of 777 Place Apartments since January 1, 2009.

RESPONSE TO REQUEST FOR PRODUCTION NO. 26 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:   Defendant objects to this request on the grounds that the request is overbroad in that it seeks documents related to issues beyond those framed by the pleadings and irrelevant to Plaintiff's Fair Housing claims. The claims asserted relate to the allegedly discriminatory management and operation of 777 Place Apartments. Despite the scope of Plaintiff's claims, the Request seeks personal information related to irrelevant employees such as janitors, handymen, gardeners and other unrelated professions. As such, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Moreover, the request invades the privacy rights of third parties with little to no connection to the instant claims. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: Documents sufficient to identify the persons employed in the operation and management of 777 Place Apartments between January 1, 2009 and the present would be in the possession of the third party management companies employed to manage 777 Place Apartments during that time frame. These third party managers include the following: FPI Management [800 Iron Point Rd. Folsom, CA 95630] (2009-2013); Pierce Education Property Management Co. [8880 Rio San Diego Dr. Suite 750, San Diego, CA 92108] (2013-2015); Asset Campus Housing Management

-83-

Co. [675 Bering Dr. Suite 200, Houston, Texas 77057] (2015-2019); and Greystar California, Inc. 999 S. Shady Grove Rd. Suite 600 Memphis, TN38120 (2019-Present).

\* \* \*

***REQUEST FOR PRODUCTION NO. 42 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:***   A complete copy of any document reflecting any market analysis, evaluation, or business plan relating to the marketing the 777 Place Apartments at any time since January 1, 2012, including any analysis, evaluation or plan to market the 777 Place Apartments as rental housing for university students.

RESPONSE TO REQUEST FOR PRODUCTION NO. 42 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:  Defendant objects to this request on the grounds that the property known as 777 Place Apartments was known under another name at certain points during the specified time frame. As such the Request is vague, ambiguous and lacks foundation. Defendant further objects because the Request is vague and ambiguous as to the use of the terms "market analysis" and "evaluation" and assumes facts that any type of plan even existed. The Request is also overbroad to the point of being harassing given that the plaintiff's claims are based on discrete allegations and not related to the entire occupancy of the property. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: Defendant will produce all marketing materials from the relevant time period in its possession, custody or control as they are maintained in the ordinary course of course of business. However, Defendant is informed and believes that additional documents could be in the possession of the third party management companies employed to manage 777 Place

Apartments. These third party managers include the following: FPI Management [800 Iron Point Rd. Folsom, CA 95630] (2009-2013); and Pierce Education Property Management Co. [8880 Rio San Diego Dr. Suite 750, San Diego, CA 92108].

*   *   *

**REQUEST FOR PRODUCTION NO. 43 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:** A complete copy of any document reflecting any report or solicitation to LLC members, investors or potential investors regarding the marketing of the 777 Place Apartments, including the marketing to university students.

RESPONSE TO REQUEST FOR PRODUCTION NO. 43 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:   Defendant objects to this request on the grounds that the request is overbroad in that it seeks documents related to issues beyond those framed by the pleadings and irrelevant to Plaintiff's Fair Housing claims. The claims asserted relate to the allegedly discriminatory management and operation of 777 Place Apartments. Documents reflecting investors or potential investors are irrelevant and not proportional to the needs of this case. Defendant further objects because the Request is vague and ambiguous as to the use of the terms "report" and "solicitation" are vague and ambiguous and fail to properly categorize the types of documents sought by this request. The Request is also overbroad to the point of being harassing given that the plaintiff's claims are based on discrete allegations of discriminatory conduct and not related to any outside investors – assuming any such investors exist. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: Defendant will produce all marketing materials from the relevant

time period in its possession, custody or control as they are maintained in the ordinary course of course of business. However, Defendant is informed and believes that additional documents could be in the possession of the third party management companies employed to manage 777 Place Apartments. These third party managers include the following: FPI Management [800 Iron Point Rd. Folsom, CA 95630] (2009-2013); Pierce Education Property Management Co. [8880 Rio San Diego Dr., Suite 750, San Diego, CA 92108] (2013-2015); Asset Campus Housing Management Co. [675 Bering Dr. Suite 200, Houston, Texas 77057] (2015-2019); and Greystar California, Inc. 999 S. Shady Grove Rd. Suite 600 Memphis, TN 38120 (2019-Present).

* * *

***REQUEST FOR PRODUCTION NO. 44 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:*** Based on [TPG's and Pomona Park's] statement in the Rule 26(f) report –

> *777 Place Apartments has used limited, targeted marketing techniques to ensure it is meeting the needs of a changing community (ECF 28, p. 6)*

– please produce documents that reflect or regard the "limited, targeted marketing techniques" used to market the 777 Place Apartments.

RESPONSE TO REQUEST FOR PRODUCTION NO. 44 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:  Defendant objects to this request on the grounds that the request is overbroad in that it seeks documents related to issues beyond those framed by the pleadings and irrelevant to Plaintiff's Fair Housing claims. The claims asserted relate to the allegedly discriminatory management and operation of 777 Place Apartments. Documents reflecting investors or potential investors are irrelevant and not proportional to the needs of this case. Defendant further

objects because the Request is vague and ambiguous as to the use of the terms "report" and "solicitation" are vague and ambiguous and fail to properly categorize the types of documents sought by this request. The Request is also overbroad to the point of being harassing given that the plaintiff's claims are based on discrete allegations of discriminatory conduct and not related to any outside investors – assuming any such investors exist. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: Defendant will produce all marketing materials from the relevant time period in its possession, custody or control as they are maintained in the ordinary course of course of business. However, Defendant is informed and believes that additional documents could be in the possession of the third party management companies employed to manage 777 Place Apartments. These third party managers include the following: FPI Management [800 Iron Point Rd. Folsom, CA 95630] (2009-2013); Pierce Education Property Management Co. [8880 Rio San Diego Dr. Suite 750, San Diego, CA 92108] (2013-2015); Asset Campus Housing Management Co. [675 Bering Dr. Suite 200, Houston, Texas 77057] (2015-2019); and Greystar California, Inc. 999 S. Shady Grove Rd. Suite 600 Memphis, TN 38120 (2019-Present).

\* \* \*

**REQUEST FOR PRODUCTION NO. 46 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:**   As alleged in the complaint (ECF 3, ¶ 18) –

> *Apartments will be mark[et]ed in accordance with all Affirmative Fair Housing guidelines and policies*

-87-

– please produce "all Affirmative Fair Housing guidelines and policies" that have informed the marketing of the 777 Place Apartments at any time since January 1, 2012.

RESPONSE TO REQUEST FOR PRODUCTION NO. 46 TO DEFENDANT TPG AND DEFENDANT POMONA PARK:  Defendant objects to this request on the grounds that the request is overbroad, vague and ambiguous as to the specific "Affirmative Fair Housing guidelines and policies" HRC is referencing. The term "influenced" is additionally vague, ambiguous and overbroad. As a result of the vague terms, the Request calls for speculation, lacks foundations and is subject to multiple interpretations. Moreover, the Request seeks documents that are not relevant to the claims and defenses and not proportional to the needs of this case. Finally, Defendant objects that the Request seeks documents held by third parties and not within this responding party's possession, custody or control. Subject to and without waiving the foregoing, Defendant responds as follows: After a diligent search and reasonable inquiry, Defendant is unable to comply because the requested document never existed. However, Defendant is informed and believes that any written polices regarding compliance with Fair Housing mandates would be in the possession of the third party management companies employed to manage 777 Place Apartments. These third party managers include the following: FPI Management [800 Iron Point Rd. Folsom, CA 95630] (2009-2013); Pierce Education Property Management Co. [8880 Rio San Diego Dr. Suite 750, San Diego, CA 92108] (2013-2015); Asset  Campus Housing Management Co. [675 Bering Dr. Suite 200, Houston, Texas 77057] (2015-2019); and Greystar California, Inc. 999 S. Shady Grove Rd. Suite 600 Memphis, TN 38120 (2019-Present).

**A.      Plaintiff HRC's Argument Re: Discovery of Information Regarding the Marketing of Rental Dwellings at the 777 Place Apartments.**

1.      *The factual basis for the discovery of information regarding the marketing of dwelling at the 777 Place Apartments.*

Three sources provide the factual basis for this discovery. The <u>first</u> is public records uncovered by HRC during its prefiling investigation. As described above, *supra* I.A.1., in 1996 defendants' principal, Kenneth Picerne, executed an Owner Participation Agreement (OPA) with the City of Pomona. In this OPA, defendants covenanted the following:

Apartments will be marketed in accordance with all Affirmative Fair Housing guidelines and policies. (a) Advertising will be placed in appropriate publications including, but not limited to local sources, public agencies and local community groups; (b) The marketing plan will attempt to include outreach strategies for persons with special occupancy requirements, including the elderly and physically disabled. In this endeavor, a comprehensive effort will be made to distribute marketing materials to organizations that are likely to have contact with senior citizens and/or handicapped persons. Organizations that could assist the Agent in this endeavor would be senior citizen groups, meal providers, health providers, community resource referral agencies, educational agencies, and religious institutions and organizations. All advertising and promotional materials used for these Properties will include the prominent use of the Equal Housing Opportunity logos and slogans. (Exhibit 24/City 97, p. 6; *see also* First Amended Complaint/ECF 35, ¶18.)

Because these marketing obligations run with the land (Exhibit 24/City 26-27, p. 24-25), records reflecting their implementation should exist for the last twenty-five years.

-89-

The <u>second</u> source is documents that are publicly available on the website of the 777 Place Apartments. As alleged in the First Amended Complaint (ECF 35, ¶¶ 34-38), since at least 2014 defendants have marketed and advertised the 777 Place Apartments primarily to students, rather than to senior citizens, handicapped persons, or persons in need of affordable housing. Screen shots and pictures reflecting this advertising have been disclosed in this action by plaintiff as Bates nos. TPG 1-284. (*See*, *e.g.*, Exhibit 44/TPG 1, depicting a banner entitled "Modern Student Living.") Internal, non-public records reflecting the circumstances of these marketing decisions should be in the possession of defendants.

The <u>third</u> source is documents that have been produced via subpoena by Greystar, defendants' property management company since 2019. For example, Greystar has produced emails suggesting that defendants are intimately involved in the marketing decision making process (*see*, *e.g.*, Exhibit 45/GS 86 stating "The VP for picerne had a meeting with the VP at Western to discuss partnering together or working together with housing students"). They have also produced emails showing defendants personally recommending marketing strategies to Greystar:

> I want us to go after students hard and that's both on renewals and new residents. Can we offer additional discounts or promotions for students? How bout free WiFi/internet (rent discount to offset internet cost) as well? An Apple gift card if they renew lease within the next week, etc. (email from Yunmi Martin, TPG principal, Exhibit 46/GS 91.)

If Greystar has copies of these kinds of records, defendants must have them as well, and for a greater time period than Greystar has access to.

## 2. *The legal basis for discovery of information regarding the marketing of dwellings at the 777 Place Apartments.*

The requested marketing materials are discoverable because they are directly relevant to plaintiff's fair housing claims, as plaintiff alleges that

defendants' discrimination was carried out in part through its marketing efforts. (*See*, *e.g.*, First Amended Complaint/ECF 35, ¶1 ("Defendants engaged in discrimination to further their policy of marketing and operating the apartment complex as rental housing for university students.") and First Amended Complaint/ECF 35, ¶ 10 ("Since at least 2009, Defendants have engaged in a systemic policy or pattern of housing discrimination against seniors, families with children and blacks in furtherance of defendants' campaign to market and operate 777 Place Apartments as rental housing for university students."). Courts routinely compel production of marketing materials to shed light on a defendant's practices. *See*, *e.g.*, *Advanced Visual Image Design, LLC v. Exist, Inc.*, No. EDCV 14-2525-JGB (KKx), 2015 WL 4934178, at *4 (C.D. Cal. Aug. 18, 2015) (compelling production of "advertising promotion or marketing materials, 'including all catalogs, advertisements, price sheets, flyers and brochures . . . within the last eight (8) years'").

Recognizing that the marketing materials are highly relevant, defendants state in response to Request 42-44 that they "will produce" marketing documents in their possession, custody, or control. However, defendants have produced very few marketing documents, and none of their email communications reflecting defendants' direction to their managers, despite promising to furnish three sources of these documents at a Local Rule 37 conference. (Brancart Dec., ¶¶ 8, 9; Exhibit 9.) First, defendants indicated that responsive materials would be present in their paper tenant files, but plaintiff did not find any marketing documents in their inspection of these files. Second, defendants indicated that responsive materials would be present in their property management system Entrata, but they have refused to produce any ESI from this system. Third, defendants indicated that responsive materials would be in the possession of their management companies, but even if that is true, those same documents should be equally available from defendants. The management agreements between TPG and its management

companies uniformly state, "Manager agrees hereby to assist Owner, upon Owner's request, at Owner's expense, with (a) the preparation of **marketing materials approved by Owner, in its sole discretion**." (Brancart Dec., ¶ 36.) If TPG had "sole discretion" to approve marketing materials, an equal or greater amount of records reflecting the application of this discretion to the marketing materials should be in the possession of defendants. The aforementioned emails that TPG's management company Greystar has produced so far (*see*, *e.g.*, Exhibits 45, 46) confirm this inference. Accordingly, defendants must make good on their promise that they "will produce" responsive records to Request 42-44.

In response to Request 26 and 46, by contrast, defendants simply claim that the requested documents are "not within [their] possession, custody or control" or that "the requested document never existed." These statements strain credulity for the same reasons outlined above. For the last twenty-five years, defendants have been obligated to market the 777 Place Apartments "in accordance with all Affirmative Fair Housing guidelines and policies" (Exhibit 24/City 97, p. 6), yet they now avow that any documents reflecting their compliance or non-compliance with that obligation "never existed" (Request 46). Similarly, for at least the last twelve years, defendants have stipulated in their management agreements that they have "sole discretion" (Brancart Dec., ¶ 36) to approve marketing materials, yet they now state that documents reflecting the email addresses used by the marketing decision makers "are not within [their] possession, custody or control" (Request 26). These representations are not plausible.

**B.    Defendants' Argument Re: Discovery of Information Regarding the Marketing of Rental Dwellings at the 777 Place Apartments**.

Requests 26, 42, 43, 44 and 46 all seek documents related to Defendants' marketing.  Defendants, as well as the third-party managers, have all produced marketing plans, communications and exemplars of the marketing materials in use at the Property   As a starting point, the Property was managed by third-party

managers.  As such, the day-to-day marketing was performed by the local representatives and managers.  Defendants were, however, provided with general marketing plans for approval and these plans were produced.  Nevertheless, the underlying information related to formulation and execution of the marketing strategies would have been primarily within the possession of the third party managers.  Defendants' responses to these discovery requests correctly indicate that responsive information would be in the possession of these managers.  To the extent additional documents were located in the third-party managers' files is understandable and to be expected - marketing was one of their express jobs.

### 1.   *Request for Production No. 26*

Request for production No. 26 seeks the identification of the individuals responsible for the Property's "management, rental, or marketing."  Defendants have produced thousands of pages of records and identified witnesses in their disclosures related to the decision makers.  Given that many of the marketing decisions were originally proposed by employees at the third-party management companies (and in many instances over a decade ago), some responsive information to Request for Production No. 26 is simply no longer within Defendants' possession, custody or control.  However, Defendants have identified the executives within their own corporate structure who would have been involved in management, rental and marketing decisions.  Nevertheless, those individuals would only have been involved at a higher level given that the third-party mangers were ultimately responsible for the day-to-day operations.  Therefore, the additional information Plaintiff seeks would be in the possession of the managers - as Defendants stated in discovery.

### 2.   *Request for Production Nos. 42, 43, 44 and 46*

Plaintiff last met and conferred with Defendants regarding Requests 42, 43, 44 and 46 (seeking discovery on the Property's marketing) on September 25, 2020.  Immediately after meeting and conferring with Defendants regarding their request

that Defendants produce the information from the third-managers, Plaintiff subpoenaed the information from each manager directly.   (Farkas Decl.  10.)   Given that Plaintiff (1) obtained the information directly from each manager and (2) never indicated further discovery was necessary, Defendants provided the tenant files on October 16, 2020, and obtained copies of the managers' productions.  Having heard nothing until receiving this discovery motion, Defendants are surprised additional discovery is now being sought - 10 months after the last communication on this issue.   (Farkas Decl.  12.)  Moreover, given that most of these managers are third-parties, it would be not only futile but oppressive to ask them to produce the same materials already subpoenaed by Plaintiff.  Therefore, no further discovery should be ordered on these requests.

* * *

Dated:  June 23, 2021.

Respectfully submitted,

BRANCART & BRANCART

*/s/ Christopher Brancart*
Christopher Brancart (SBN 128475)
cbrancart@brancart.com
P.O. Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141

HOUSING RIGHTS CENTER
D. Scott Chang (SBN 146403)
schang@housingrightscenter.org
Rodney Leggett (SBN 332119)
rleggett@housingrightscenter.org
Zachary Frederick (SBN 333738)
zfrederick@housingrightscenter.org
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA 90010
Tel:   (949) 398-8080

Attorneys for Plaintiff Housing Rights Center

CALLAHAN & BLAINE, APLC

*/s/ Stephen Farkas*
Edward Susolik (SBN 151081)
esusolik@callahan-law.com
Stephen P. Farkas (SBN 234060)
sfarkas@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Tel:   (714) 241-4444

Attorneys for Defendants TPG Metropolitan, LLC and Pomona Park & Plaza, LLC

-94-