HOUSING RIGHTS CENTER
D. Scott Chang (SBN 146403)
schang@housingrightscenter.org
Zachary Frederick (SBN 333738)
zfrederick@housingrightscenter.org
Rodney Leggett (SBN 332119)
rleggett@housingrightscenter.org
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA 90010
Tel.: (213) 387-8400 x1116

BRANCART & BRANCART
Christopher Brancart (SBN 128475)
cbrancart@brancart.com
P.O. Box 686
Pescadero, CA 94060
Tel: (650) 879-0141
Fax: (650) 879-1103

*Attorneys for Housing Rights Center*

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER INC. d/b/a HOUSING RIGHTS CENTER,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>TPG (METROPOLITAN) LLC, POMONA PARK & PLAZA LLC, and ASSET CAMPUS USA, LLC,<br><br>　　　　Defendants | Case No.: 2:20-cv-03056-JAK-PLA<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF DEFENDANTS TPG (METROPOLITAN), LLC AND POMONA PARK & PLAZA, LLC**<br><br>Date: July 14, 2021<br>Time: 10:00 a.m.<br>Room: To be determined |

-i-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………1

II.   STATEMENT OF FACTS………………………………………...1

    A.    History of 777 Place Apartments……...………………….1

    B.    Defendants' Discrimination Against Tenants…………...……...3

III.   STANDARD OF REVIEW………………………………………..4

IV.   ARGUMENT………………………………………………………5

    A.    Plaintiff Has Standing to Assert FHA and FEHA Claims Related to the Affordability Restrictions on the Basis of Familial Status, Race, and Age…………………………………………...…..…5

    B.    Defendants' System of Discrimination Extended the Accrual of the Statute of Limitations for Plaintiff's Claims Related to the Displacement of Section 8 Tenants Under the Continuing Violations Doctrine……………………………...……………10

        1.    Plaintiff's Claims Related to the Displacement of Section 8 Tenants are Part of Systemic Policies Preferring University Students Systemic…….…...11

        2.    Defendants Engaged in Serial Violations of the Fair Housing Act Including the Displacement of Section 8 Tenants……………………………………13

    C.    Plaintiff Requests the Court Defer Consideration of this Motion Until Plaintiff has the Opportunity to Review Defendants' Supplemental Discovery Responses and Production of Documents……………………………………………....15

V.    CONCLUSION…………………………………………………..16

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**Cases**

*AMTRAK v. Morgan*,
    536 U.S. 101 (2002)..................................................................................14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................5

*Anderson v. Reno*,
   190 F.3d 930 (9th Cir. 1999)...................................................................13

*Ave. 6E Invs., Ltd. Liab. Co. v. City of Yuma*,
   818 F.3d 493 (9th Cir. 2016)..................................................................7, 9

*Aydin Corp. v. Loral Corp.*,
   718 F.2d 897 (9th Cir. 1983)....................................................................5

*Bird v. State*,
   935 F.3d 738 (9th Cir. 2019)............................................................ 13, 14

*Braxton-Secret v. A.H. Robins Co.*,
   769 F.2d 528 (9th Cir. 1985)....................................................................8

*Budnick v. Town of Carefree*,
   518 F.3d 1109 (9th Cir. 2008)..................................................................8

*Californians for Disability Rights, Inc. v. Cal. DOT*,
No. C 06-5125 SBA, 2009 U.S. Dist. LEXIS 91490 (N.D. Cal. Sep. 14, 2009) ....11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................4

*Cherosky v. Henderson,*
330 F.3d 1243, 1247 (9th Cir. 2003)………...…………………………………13

*City of L.A. v. Citigroup Inc.*,
   24 F. Supp. 3d 940 (C.D. Cal. 2014)................................................13

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

*Cmty. Action League v. City of Palmdale*,
   No. CV 11-4817 ODW (VBKx), 2012 U.S. Dist. LEXIS 189977 (C.D. Cal. Feb. 1, 2012) ...........................................................................................................7

*Comm. Concerning Cmty. Improvement v. City of Modesto* ("CCCI"),
   583 F.3d 690 (9th Cir. 2009) ...............................................................................6

*Crossroads Residents Organized for Stable & Secure ResiDencieS (CROSSRDS) v. MSP Crossroads Apartments LLC*,
No. 16-233 ADM/KMM, 2016 U.S. Dist. LEXIS 86965 (D. Minn. July 5, 2016) ........................................................................................... …7, 9

*Douglas v. Cal. Dep't of Youth Auth.*,
   271 F.3d 812 (9th Cir. 2001) ................................................................ 10, 11, 13

*First Nat'l Bank v. Cities Serv. Co.*,
   391 U.S. 253 (1968) ............................................................................................5

*Garcia v. Brockway*,
   526 F.3d 456 (9th Cir. 2008) ............................................................................11

*Green v. Los Angeles County Superintendent of Schools*,
   883 F.2d 1472 (9th Cir. 1989) ..................................................................... 10, 13

*Gutowsky v. County of Placer*,
   108 F.3d 256 (9th Cir. 1997) ............................................................................10

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................. 5, 6, 11

*Inland Mediation Bd. v. City of Pomona*,
   158 F. Supp. 2d 1120 (C.D. Cal. 2001) ...........................................................13

*Intermountain Fair Hous. Council v. Orchards at Fairview Condo. Ass'n*,
   No. 1:09-cv-522-CWD, 2011 U.S. Dist. LEXIS 10466 (D. Idaho Jan. 18, 2011) .......................................................................................................12

*K.S. v. Fremont Unified Sch. Dist.*,
   No. C 06-07218 SI, 2007 U.S. Dist. LEXIS 24860 (N.D. Cal. Mar. 23, 2007) ................................................................................ …11, 12

-iv-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

*Kaiser Cement Corp. v. Fishbach & Moore, Inc.*,
   793 F.2d 1100 (9th Cir. 1986) ...................................................................5

*Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) .....................................................................7

*Kirola v. City & Cty. of S.F.*,
   No. C 07-3685 SBA, 2011 U.S. Dist. LEXIS 4091 (N.D. Cal. Jan. 11, 2011)....12

*Mhany Mgmt. v. Cty. of Nassau*,
   819 F.3d 581 (2d Cir. 2016) ......................................................................9

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
   18 F.3d 1468 (9th Cir. 1994) .....................................................................4

*O'Loghlin v. Cty. of Orange*,
   229 F.3d 871 (9th Cir. 2000) ............................................................... 13, 14

*Pac. Shores Props., LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013) .................................................................8, 9

*Qualls v. Blue Cross of Cal., Inc.*,
   22 F.3d 839 (9th Cir. 1994) .....................................................................15

*Sisemore v. Master Fin., Inc.*,
   151 Cal. App. 4th 1386 (2007) ...................................................................5

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*,
   429 U.S. 252 (1977) .............................................................................. 5, 8, 9

*Zoslaw v. MCA Distrib. Corp.*,
693 F.2d 870 (9th Cir. 1982) .....................................................................4

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

**Statutes**

42 U.S.C. § 3613(a)(1)(A) ................................................................................11

**Rules**

Fed. R. Civ. P. 56(d) .....................................................................................16

**Regulations**

24 C.F.R. § 100.70(b)……………………………………………...………16

24 C.F.R. § 100.600(2)………………………………………………………...16

Cal. Code Regs. tit. 2, § 12061 ........................................................................6

H.R. Rep. No. 711, 100th Cong., 2d Sess. 22 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2194 ..............................................................................15

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

## I.    INTRODUCTION

Plaintiff Housing Rights Center ("HRC") hereby submits this opposition to Defendants' motion for summary adjudication.

Since at least 2009, Defendants TPG (Metropolitan) LLC, Pomona Park & Plaza LLC, and Asset Campus USA LLC—the owners and operators of a large, subsidized apartment complex in Pomona named 777 Place Apartments—have engaged in a systemic policy or pattern of housing discrimination against seniors, families with children, and Black renters in furtherance of Defendants' campaign to market and operate 777 Place Apartments as rental housing for students of nearby universities. To advance that objective, Defendants have committed discriminatory housing practices in violation of the Fair Housing Act ("FHA") and the California Fair Employment and Housing Act ("FEHA").

In their motion, Defendants argue that: (1) Plaintiff does not have standing to enforce a housing affordability covenant listed in a Covenants, Conditions and Restrictions ("CC&Rs") requirement that Defendants are parties to and (2) that the statute of limitations has passed on all of Plaintiff's claims involving Housing Choice Voucher ("Section 8") tenants. These arguments confuse the issues and are immaterial to Plaintiff's actual claims in this action. Plaintiff has standing to assert claims involving the affordability covenant because the CC&Rs are evidence that Defendants' actions had a disparate impact on, and resulted in disparate treatment of, residents on the basis of familial status, race, and age. Additionally, the statute of limitations on Plaintiff's claims involving Section 8 residents continued to accrue until at least 2020 under the continuing violations doctrine. Therefore, Plaintiff requests that the Court deny summary adjudication for Defendants on Plaintiff's FHA and FEHA claims.

## II.    STATEMENT OF FACTS

### A.    History of 777 Place Apartments

In 1985, the City of Pomona's Redevelopment Agency transferred the land

-1-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

below 777 Place Apartments to Bauer Redevelopment Group in exchange for Bauer's agreement to develop and construct a large apartment complex of affordable housing. (Pl.'s SMF No. 17.) In 1996, Defendant Park & Plaza acquired 777 Place Apartments pursuant to an Owner Participation Agreement with the City's Redevelopment Agency. Park & Plaza agreed to rehabilitate 777 Place Apartments—then known as The Park and Plaza Apartments—and to operate them largely as affordable housing by reserving 20% of units for very low-income residents and 40% of units for low to moderate income residents. (Def.'s SMF Nos. 3, 7.)

In 1998, the City of Pomona approved issuance of $11,500,000 in revenue refunding bonds by its Redevelopment Agency for the purpose of refinancing Bauer's 1985 bond debt assumed by Defendant Park & Plaza as part of its acquisition of the 777 Place Apartments. To issue those revenue bonds, the City of Pomona and Defendant Park & Plaza were required to execute and record an Amended and Restated Regulatory Agreement that superseded the terms of the 1985 development agreement executed by Bauer and the City. (Def.'s SMF Nos. 9, 10.)

Under this amended agreement, Defendant Park & Plaza pledged that it would accept tenants with Section 8 housing choice vouchers. Defendant Park & Plaza agreed to treat Section 8 tenants the same "as all other prospective tenants," prohibiting any practice that excluded Section 8 tenants from renting at the 777 Place Apartments. (*Id.*)

In 2009, Defendant Park & Plaza acknowledged to the Redevelopment Agency that while the 1998 regulatory agreement superseded Pomona's 1985 development agreement with Bauer, the 1998 regulatory agreement did not alter Defendants' obligations under the 1996 Declaration of Conditions, Covenants and Restrictions including the obligation to set aside and market the same proportion of dwellings to low-income and elderly persons. (Pl.'s SMF No. 18.)

In 2012, Defendant Park & Plaza transferred ownership of 777 Place

-2-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

Apartments to Defendant TPG (Metropolitan), LLC, another Picerne entity. (Def.'s SMF No. 3.)

**B.     Defendants' Discrimination Against Tenants**

Since at least 2009, Defendants have engaged in housing discrimination against seniors, families with children, and Black tenants in furtherance of Defendants' campaign to market and operate 777 Place Apartments as rental housing for university students. To advance that objective, Defendants have committed discriminatory housing practices in violation of the FHA and FEHA.

Starting in 2009, Defendants began targeting elderly residents at 777 Place Apartments for removal, ousting them from their affordable apartments to make way for more university students. (Ex. G.) Defendants evicted and displaced elderly tenants despite an affordability covenant that required 777 Place Apartments to set aside 123 apartments for low-income seniors and more than 300 units overall for low-income renters. (Def.'s SMF Nos. 3, 7; Pl.'s SMF No. 18.)

Next, in a twelve-month period between 2013 and 2014, Defendants terminated the tenancies of every household whose rent was subsidized under the Section 8 Housing Choice Voucher program. (Pl.'s SMF No. 21; Def.'s SMF No. 15.) For the families with children that remained, Defendants imposed restrictions on the activities of children, eventually shunting families to the least desirable parts of the large complex. (*See* Leggett Rule 56(d) Decl. ¶ 15.)

In 2017, fair housing testing verified that Defendants' rental agents discriminated against black home seekers. Defendants' leasing agent consistently provided preferential treatment to white testers by actually showing the white tester an available unit, telling the white tester of multiple available units, inviting the white tester to apply on-site, and sending a personalized email to the white tester. By contrast, the leasing agent discouraged Black testers from renting an apartment at 777 Place Apartments by failing to show a Black tester an available unit, informing Black testers of fewer available units, not inviting the Black tester to apply

-3-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

on-site and not sending a personalized email to the Black tester. (Ex. H.)

Finally, in 2014 Defendants began marketing their apartments to college students. (Pl.'s SMF No. 24.) Since at least 2018, and continuing into 2020, Defendants have exclusively directed their marketing to university students. Statements on the website for 777 Place Apartments include:

- Don't miss an opportunity to experience the best in undergraduate and graduate student housing;
- 777 Place provides students an ideal environment to thrive, build relationships and conveniently live next to campus; and
- At 777 Place our goal is to make the student life experience ideal for everyone! (Pl.'s SMF No. 22.)

Additionally, in 2020 signs at the property advertised 777 Place Apartments as "Modern Student Living" and stated, "LIVE HERE AND NEVER BE LATE TO CLASS" and "UNLIMITED POSSIBILITIES IN STUDENT LIVING." (Pl.'s SMF No. 23.)

On April 1, 2020 Plaintiff filed this action, alleging that Defendants discriminated against residents on the basis of familial status, age, and race. (ECF Nos. 3, 35.) Plaintiff asserts claims under the FHA and FEHA.

## III.    STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). An issue is "genuine" if there is a sufficient evidentiary basis

-4-

on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

## IV.    ARGUMENT

### A. Plaintiff Has Standing to Assert FHA and FEHA Claims Related to the Affordability Restrictions on the Basis of Familial Status, Race, and Age.

Defendants argue that HRC lacks standing to claim that Defendants failed to comply with the affordability restrictions because HRC is not a party to the CC&R agreement. (ECF No. 48-1 at 9-11.) Defendants are incorrect. Plaintiff has standing to assert FHA and FEHA claims related to the CC&R agreement because Defendants' failure to comply with the affordability restrictions had a disparate impact based on familial status, race, and age and because that failure is circumstantial evidence of intentional disparate treatment under the *Arlington Heights* method of proof.

The sole requirement for standing to sue under both the FHA and FEHA "is Article III minima injury in fact: that the plaintiff allege that as a result of the defendant's actions they suffered a 'distinct and palpable injury.'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982); *see also Sisemore v. Master Fin., Inc.*, 151 Cal. App. 4th 1386, 1424-1426 (2007) (applying federal FHA standing

-5-

requirements to FEHA). A fair housing organization establishes standing when it suffers "a concrete and demonstrable injury with a consequent drain on the organization's resources" or an impairment in its non-economic interest in encouraging open housing. *Havens*, 455 U.S. at 370.

Importantly, Defendants concede that HRC has "establish[ed] standing to pursue FHA claims alleging discrimination" based on the protected classes listed under the FHA and FEHA including familial status and race. (ECF No. 48-1 at 9-10; *see also* ECF No. 35 at 17-19.)[1] HRC's claims relating to the affordability restrictions listed in the CC&R agreement are the same claims of discrimination based on familial status, race, and age (*see* ECF No. 35 at 21-25) that Defendants concede HRC has standing to pursue. As recently found by Magistrate Judge Abrams, HRC is not "in any way seeking to enforce [] compliance [with the CC&Rs]. Instead, plaintiff is seeking the requested information to help it determine whether defendants' actions resulted in disparate treatment or disparate impact under plaintiff's FHA and FEHA claims." (ECF No. 61 at 13.)

Under the disparate impact theory, HRC must show "(1) the occurrence of certain outwardly neutral . . . practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [type] produced by the [defendant's] facially neutral acts or practices." *Comm. Concerning Cmty. Improvement v. City of Modesto* ("CCCI"), 583 F.3d 690, 711 (9th Cir. 2009); *see also* Cal. Code Regs. tit. 2, § 12061 (the plaintiff or complainant "has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect"). Defendants' breach of their affordable housing obligations and their duty to qualify rental applicants as low-income is one such practice. (*See* Leggett Rule 56(d) Decl. ¶ 16, 17, 18.) Income is disproportionally distributed between black and white renters—in 2019, the Black poverty rate was 18.8 percent, while the overall

---

[1]Although not directly stated in Defendants' brief, Defendants also do not appear to challenge Plaintiff's standing to assert age discrimination claims under FEHA. (*See* ECF No. 48-1 at 9-10.)

-6-

white poverty rate was 9.1 percent and the non-Hispanic white poverty rate was 7.3 percent. *See*, *e.g*, *Income and Poverty in the United States 2019*, p.12 (United States Census Bureau) (Ex. I). Given that disparate distribution, a qualification standard that favors low-income renters will disproportionately favor black renters. Reversed, as alleged here (ECF No. 35 at ¶ 50, 61, 64), a practice that abrogates or disregards a qualification standard that favors low-income renters will disproportionately disfavor black renters. Additionally, Section 8 recipients living at 777 Place Apartments—none of which remained on the property by 2014 (Def.'s SMF No. 15; Pl.'s SMF No. 21)—were overwhelmingly elderly, black, or low-income families with children. (Pl.'s SMF Nos. 19-20.) Therefore, Defendants' alleged policy of displacing these low-income tenants in violation of the affordability restriction disproportionately harmed residents who were elderly, black, and/or had children. Viewing the evidence and drawing all inferences in the light most favorable to Plaintiff as the nonmoving party, a rational trier of fact could find that Defendants' breach of the affordability restrictions had a disparate impact on the basis of familial status, race, and age. *See Ave. 6E Invs., Ltd. Liab. Co. v. City of Yuma*, 818 F.3d 493, 508 (9th Cir. 2016) (finding potential FHA violation where defendant city's denial of plaintiff developer's application to build moderately priced housing could have disparate impact on Hispanic households); *Keith v. Volpe*, 858 F.2d 467, 484 (9th Cir. 1988) (restrictions on the construction of housing for low-income households violated FHA because failure to build "had twice the adverse impact on minorities as it had on whites").[2]

Defendants' violation of the affordable housing restriction is also relevant

---

[2]*See also Crossroads Residents Organized for Stable & Secure ResiDencieS (CROSSRDS) v. MSP Crossroads Apartments LLC*, No. 16-233 ADM/KMM, 2016 U.S. Dist. LEXIS 86965 at *16-27 (D. Minn. July 5, 2016*)* (plaintiff tenant organization stated a disparate impact claim under the FHA where defendant developer's plans to remake housing complex to appeal to younger population had disparate impact on minority tenants); *Cmty. Action League v. City of Palmdale*, No. CV 11-4817 ODW (VBKx), 2012 U.S. Dist. LEXIS 189977, at *11 (C.D. Cal. Feb. 1, 2012) (finding that defendant city could be liable for violating the FHA under a disparate impact theory for allegedly targeting existing and prospective Section 8 tenants for removal).

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

evidence of intentional discrimination on the basis of familial status, race, and age under a disparate treatment theory. Defendants' alleged discriminatory intent (ECF No. 35 at ¶ 10)—like all mental states—is an abstract concept that cannot be directly observed.[3] Instead, its existence must be detected either through affirmation by the discriminating actor in the form of a discriminatory statement or expressive conduct (direct evidence) or inferred from observations of the discriminating actor's decisional behavior (circumstantial evidence). *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008). Statements of discriminatory intent are rare. Much more commonly, plaintiffs must resort to proving disparate treatment using circumstantial evidence, either directly using a mosaic of factors (*Arlington Heights* framework) or indirectly using burden-shifting (*McDonnell-Douglas* framework). Because this action alleges that Defendants engaged in a policy or practice of discrimination (ECF No. 35 at ¶ 10, 25, 55, 59), the *Arlington Heights* framework fits best. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158–59 (9th Cir. 2013) (explaining that when a plaintiff relies on "direct or circumstantial evidence" they need not use the *McDonnell-Douglas* approach but may instead use the "sensitive multi-factor inquiry" in *Arlington Heights* to "determine whether plaintiffs have created a triable issue of fact that the defendant's actions were motivated by discriminatory intent").

Under the *Arlington Heights* framework, the historical background related to Defendants' obligation to provide affordable housing (Def.'s SMF Nos. 5, 6, 7, 14), *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)*; Pac. Shores*, 730 F.3d at 1158–59, the sequence of events leading to Defendants' disregard of the affordable housing restriction, *Arlington Heights,* 429 U.S. at 66-67; *Pac. Shores*, 730 F.3d at 1158–59, and communications reflecting an

---

[3]The extent to which Defendants intentionally discriminated is a factual question that must be left to a jury. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) ("Questions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment.").

-8-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

understanding of the effect of Defendants' decision to disregard the affordable housing restriction, *Arlington Heights,* 429 U.S. at 266; *Pac. Shores*, 730 F.3d at 1158–59, are factors relevant to determining the intentionality of Defendants' discrimination. Given their repeated, recorded agreements to enforce the affordable housing restrictions (Def.'s SMF Nos. 6, 7, 14; Pl.'s SMF No. 18), a reasonable finder of fact could determine that Defendants' breach of those agreements—along with other evidence (*see infra* Section IV.C)—could support an inference of discriminatory intent against residents on the basis of familial status, race, and age. *Ibid.*[4] *See Ave. 6E Invs.*, 818 F.3d at 509; *Pac. Shores*, 730 F.3d at 1164.[5]

Genuine issues of material fact exist regarding whether Defendants' failure to comply with the affordability restrictions created a disparate impact on residents on the basis of familial status, race, and age. Likewise, genuine issues of material fact exist regarding whether Defendants intentionally discriminated against residents on the basis of familial status, race, and age by failing to comply with the restrictions. Accordingly, Plaintiff has established standing at summary judgment to assert claims involving the affordability restrictions on the basis of familial status, race, and age discrimination. Therefore, the Court should deny summary judgment for Defendants as to this issue.

///

///

---

[4]Similarly, whether Defendants' failure to enforce the affordability restrictions was used as a proxy to discriminate on the basis of race is a question for the finder of fact. *See Pac. Shores*, 730 F.3d at 1160 ("Proxy discrimination is a form of facial discrimination. It arises when the defendant enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group.").

[5]*See also Mhany Mgmt. v. Cty. of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016) (sequence of events demonstrating city officials' reversal from supporting zoning change to permit multi-family housing to banning development of multi-family housing supported inference of discriminatory intent); *CROSSRDS*, 2016 U.S. Dist. LEXIS 86965, at *14 (plaintiff tenant organization stated a claim for disparate treatment under FHA where the defendant developer's plans for remaking housing complex were allegedly designed to "remake the tenant population, in order in part to reduce the number of tenants of color" to make the building "more appealing to a young urban professional population").

-9-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

**B.**     **Defendants' System of Discrimination Extended the Accrual of the Statute of Limitations for Plaintiff's Claims Related to the Displacement of Section 8 Tenants Under the Continuing Violations Doctrine.**

Defendants argue that Plaintiff's claims of discrimination under the FHA and FEHA related to the displacement of Section 8 tenants are barred due to the expiration of the statute of limitations. (ECF No. 48-1 at 11-12.) Defendants again mischaracterize Plaintiff's claims. Plaintiff's claims are limited to discrimination on the basis of familial status, age, and race but Defendants' decision to evict every Section 8 tenant from 777 Place Apartments and to increase their proportion of student renters is highly relevant evidence of Plaintiff's familial status, age, and race claims. As discussed above, because Section 8 tenants are disproportionately elderly, black, and low-income families with children, Defendants' displacement of Section 8 tenants had a disparate impact based on familial status, race, and age and that failure is circumstantial evidence of intentional disparate treatment. (*See supra* Section IV.A.)

However, Defendants are also incorrect because any claims related to the displacement of Section 8 tenants are still available under the continuing violations doctrine. The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates a claimant's rights "up to a point in time that falls within the applicable limitations period." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001). A plaintiff can establish a continuing violation in two ways. "First, the plaintiff may show a serial violation by pointing to a series of related acts against one individual, of which at least one falls within the relevant period of limitations . . . [s]econd, a plaintiff may show a systematic policy or practice of discrimination that operated, in part, within the limitations period—a systemic violation." *Douglas*, 271 F.3d at 822 (internal citations omitted); *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997); *Green v. Los Angeles County*

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

*Superintendent of Schools*, 883 F.2d 1472, 1480 (9th Cir. 1989) ("a plaintiff who shows that a [systematic and discriminatory] policy and practice operated at least in part within the limitation period satisfies the filing requirements . . . even if some or all of the events evidencing its inception occurred prior to the limitations period.") (quotation omitted).[6] Here, Plaintiff has produced evidence of both systemic policies or practices of discrimination and serial violations against residents on the basis of familial status, race, and age that extended the applicable statute of limitations until at least 2020.

> **1.      Plaintiff's Claims Related to the Displacement of Section 8 Tenants are Part of Systemic Policies Preferring University Students.**

"A systemic violation claim requires no identifiable act of discrimination in the limitations period, and refers to general practices or policies . . .." *Douglas*, 271 F.3d at 822; *K.S. v. Fremont Unified Sch. Dist.*, No. C 06-07218 SI, 2007 U.S. Dist. LEXIS 24860, at *10 (N.D. Cal. Mar. 23, 2007).

The systemic violations doctrine is applicable to claims alleged under fair housing law. 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . .."); *Garcia v. Brockway*, 526 F.3d 456, 461-62 (9th Cir. 2008) ("[W]here a plaintiff, pursuant to the [FHA], challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period, running from] the last asserted occurrence of that practice.") (quoting *Havens*, 455 U.S. at

---

[6]Because either prong of the test is sufficient to confer standing in this case, the Court need not reach the issue of serial violations if it finds that Plaintiff has standing under the systemic policy or practice prong.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

380-81).[7]

In this case, HRC has produced evidence of a policy or practice of discrimination on the basis of familial status, race, and age due to Defendants' policy of turning 777 Place into housing for students that continued until at least 2020. (ECF No. 53-34; Pl.'s SMF No. 23.) Beginning in 2009, Defendants targeted elderly residents, ousting them from their affordable apartments to make way for more university students. (Ex. G.) In a twelve-month period between 2013 and 2014, Defendants terminated the tenancies of every household whose rent was subsidized by Section 8—a group of residents that were overwhelmingly elderly, black, or low-income families with children. (Pl.'s SMF Nos. 19-20; Leggett 56(d) Decl. ¶ 15.) For the families with children that remained, Defendants subjected them to occupancy surcharges, occupancy limits, restrictions on the activities of children, and moved them to less desirable parts of the complex to discourage families with children from living at 777 Place Apartments. (*See* Leggett Rule 56(d) Decl. ¶ 15.) In 2017, fair housing testing confirmed that Defendants' real estate agents discriminated against black home seekers. (Ex. H.) Since at least 2018, and continuing into 2020, Defendants have exclusively directed their marketing to university students in a manner that communicated that non-university students would not be comfortable or compatible with 777 Place Apartments' existing residents. (Pl.'s SMF Nos. 22-23; ECF Nos. 53-34.) Additionally, statistical

---

[7]District courts in the Ninth Circuit have regularly applied the theory of systemic violations as part of the continuing violations doctrine in fair housing and civil rights cases to extend the statute of limitations. *See e.g., Intermountain Fair Hous. Council v. Orchards at Fairview Condo. Ass'n*, No. 1:09-cv-522-CWD, 2011 U.S. Dist. LEXIS 10466, at *20-21 (D. Idaho Jan. 18, 2011) (guidelines that prohibit swing sets, prohibit minor children from using the pool, and prohibit children from using the community center were continuing violations); *Kirola v. City & Cty. of S.F.*, No. C 07-3685 SBA, 2011 U.S. Dist. LEXIS 4091, at *6 (N.D. Cal. Jan. 11, 2011) (holding that plaintiffs may have been able to prove a systemic pattern or practice but denying motion to strike affirmative statute of limitations defense); *Californians for Disability Rights, Inc. v. Cal. DOT*, No. C 06-5125 SBA, 2009 U.S. Dist. LEXIS 91490, at *9 (N.D. Cal. Sep. 14, 2009) (finding that the continuing violations doctrine applied where "[d]efendants' alleged pattern and practice of relying on inadequate guidelines and procedures [] fail[ed] to ensure the requisite access for [p]laintiffs"); *K.S.*, 2007 U.S. Dist. LEXIS 24860, at *11 ("[P]olicy, pattern, and practice of failing to follow procedural and substantive requirements regarding the IEP process, result[ed] in a discriminatory impact on plaintiff.").

-12-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

evidence shows that Defendants' policy of preferring students had a disparate impact based on race and age (Pl.'s SMF Nos. 19, 20, 25, 26; *supra* Section IV.A.)[8] This evidence illustrates that Defendants' engaged in decade-long, widespread policy or practice of discrimination against residents based on familial status, race, and age—that continued until at least 2020—to further their policy of marketing and operating the apartment complex as housing for university students.[9] *Douglas*, 271 F.3d at 822 (9th Cir. 2001) (general policy or practice is a systemic continuing violation); *Green*, 883 F.2d at 1480.

## 2. Defendants Engaged in Serial Violations of the Fair Housing Act Including the Displacement of Section 8 Tenants.

Furthermore, to the extent that Defendants argue there was no systemic policy or practice of housing discrimination, the continuing violation doctrine still applies under the first prong of the test articulated in *Douglas*. *Douglas*, 271 F.3d at 822. Under the theory of serial violations, "if a discriminatory act takes place within the limitations period and that act is 'related and similar to' acts that took place outside the limitations period, all the related acts - including the earlier acts - are actionable as part of a continuing violation." *O'Loghlin v. Cty. of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (citing *Anderson v. Reno*, 190 F.3d 930, 936 (9th Cir. 1999). Whether the acts are related and similar is an issue of fact for trier of fact. *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1147 (C.D. Cal. 2001) ("At the summary judgment stage, as long as the conduct has the capacity of being considered a violation, it becomes an issue for the finder of fact.") While the Supreme Court has limited application of the serial violations prong of the continuing violations

---

[8]*Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (explaining that plaintiffs bringing pattern-or-practice claims typically use statistical evidence).

[9]Even though the types of discriminatory practices may have changed over the years, the continuing violations doctrine still applies because the practices were all implemented to further Defendants' policy of preferring students at 777 Place. *See City of L.A. v. Citigroup Inc.*, 24 F. Supp. 3d 940, 951 (C.D. Cal. 2014) (finding a pattern and practice of discriminatory lending even though types of loans changed over the eight-year continuing violation).

-13-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

doctrine, exceptions exist for "hostile work environment claims". *Bird v. State*, 935 F.3d 738, 748 (9th Cir. 2019) (citing *AMTRAK v. Morgan*, 536 U.S. 101, 105 (2002)).

Here, Plaintiff's claims of discrimination on the basis of familial status, race, and age fits within *Bird*'s hostile work environment exception as hostile environment is defined in the FHA. Under 24 C.F.R. § 100.70(b) it is unlawful to "engage in any conduct relating to the provision of housing" that "makes unavailable or denies dwellings to persons." 24 C.F.R. § 100.70(b). The phrase "any conduct" necessarily includes conduct that results in a hostile environment. Hostile environment under the FHA is defined as "unwelcome conduct that is sufficiently severe or pervasive as to interfere with," among other things, "[t]he availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection [with a dwelling]". 24 C.F.R. § 100.600(2).

In this case, Defendants created a hostile environment for tenants based on their familial status, age, and race. As discussed above, Defendants intentionally displaced Section 8 tenants, sought to remove elderly tenants from the property, subjected families with children to discriminatory policies, discriminated against Black tenants, and for years marketed 777 Place Apartments in a manner that communicated that non-university students would not be comfortable in the apartments. (*See supra* Section IV.B.1.)

Moreover, Defendants' unlawful acts continued until at least 2020 with at least one of Defendants' practices—the marketing preferring students which indicated a preference against families with children and seniors—occurring within the statutory period. *See O'Loghlin*, 229 F.3d at 875. Additionally, the acts were related and similar because Defendants engaged in the same acts of discrimination— evictions, displacement, and differential treatment—against residents based on their familial status, race, and age for the purpose of transforming the complex into

-14-

housing for university students. (*See supra* Section IV.B.1.) Accordingly, *Bird*'s hostile environment exception to the serial violations test applies here.

Viewing the evidence in the light most favorable to Plaintiff as the non-moving party, a reasonable trier of fact could determine that Defendants engaged in a policy or practice of housing discrimination against residents on the basis of familial status, race, and age to further their policy of preferring university students. Similarly, a reasonable trier of fact could determine that Defendants' unlawful acts continued until 2020 and were related and similar to previous acts of discrimination against residents. Accordingly, a genuine issue of material fact exists regarding whether Defendants' alleged systemic policy or practice of discrimination extended the accrual of Plaintiff's claim and, therefore, summary judgment for Defendants should be denied for this issue.

### C.    Plaintiff Requests the Court Defer Consideration of this Motion Until Plaintiff has the Opportunity to Review Defendants' Supplemental Discovery Responses and Production of Documents.

Rule 56(d) allows the Court to defer consideration of or denial of a motion if the opposing party shows that "it cannot present facts essential to justify its opposition". Fed. R. Civ. P. 56(d). The party making a Rule 56(d) request must show it "diligently pursued its previous discovery opportunities" and show how the discovery "would have precluded summary judgment." *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).

To the extent that Defendants dispute that the evidence Plaintiff has discussed *supra* does not create genuine issues of material fact, discovery has not yet closed, and Plaintiff expects to find additional evidence of Defendants' discriminatory policies and practices that would support Plaintiff's standing and continuing violations arguments. Specifically, Plaintiff expects to receive discovery related to Defendants' compliance with and understanding of the affordable housing covenant, as well as the source, nature, and implementation of rental criteria by Defendants

-15-

regarding the covenants, by no later than July 29, 2021. (*See* ECF No. 61 at 14 granting Plaintiff's motion to compel regarding Requests for Production of Documents ("RFP") numbers 48, 49, 61-64 (TPG only) and Interrogatory numbers 15-16 (TPG only) and ordering Defendants to provide supplemental responses and produce documents by July 29, 2021; *see also* ECF No. 52 at 56-75). HRC diligently pursued this discovery—HRC served RPD numbers 48-49 on July 16, 2020 and numbers 61-64 on January 24, 2021—and only moved to compel further responses after extensive efforts to resolve the parties' disputes including requesting four separate LR 37-1 conferences regarding these requests and interrogatories in efforts to avoid Plaintiff's eventual motion to compel. (ECF No. 53 at 2-3, 5-6.) If not for Defendants' consistent refusal to provide Plaintiff with the discovery Plaintiff is entitled to, Plaintiff's motion to compel and the Magistrate Judge's order ruling in Plaintiff's favor regarding the subject discovery responses would have been unnecessary.

Furthermore, under the Amended Scheduling Order discovery will not close until November 1, 2021. (ECF No. 47.) Plaintiff expects to conduct further discovery regarding Defendants' alleged discrimination against tenants with children. (*See* Leggett Rule 56(d) Decl. at ¶ 15.) Additionally, Plaintiff expects to produce expert witness report(s) that will further develop the factual record regarding Defendants' alleged violations of the affordability restrictions. (*See* Leggett Rule 56(d) Decl. at ¶ 18.)

Accordingly, Plaintiff asks that the Court defer consideration of Defendants' order under Rule 56(d)(1) until the close of discovery—November 1, 2021. (Leggett Rule 56(d) Decl. at ¶ 20.) Plaintiff may also seek leave of Court to file a supplemental brief in support of its opposition to Defendants' motion for summary adjudication.

## V.   CONCLUSION

Genuine issues of material fact exist regarding Plaintiff's standing to assert

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

claims regarding the affordability restrictions and whether Defendants' alleged systemic policy or practice of discrimination and serial violations extended the accrual of Plaintiff's claims of discrimination involving Section 8 tenants. Accordingly, the Court should deny Defendants' motion for summary adjudication on both issues.

Dated: July 14, 2021                    Respectfully Submitted,

                                        HOUSING RIGHTS CENTER


                                        /s/ Rodney Leggett
                                        RODNEY LEGGETT
                                        D. SCOTT CHANG
                                        ZACHARY FREDERICK

                                        I hereby attest that all other signatories listed, and
                                        on whose behalf the filing is submitted, concur in
                                        the filing's content and have authorized the filing


Dated:  July 14, 2021                   BRANCART & BRANCART


                                        /s/ Christopher Brancart
                                        CHRISTOPHER BRANCART



                                        *Attorneys for Plaintiff*

-17-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION